## Case No. 9,381.
### MECHANICS' & FARMERS' BANK v. TOWNSEND.

[5 Blatchf. 315;[1] 3 Int. Rev. Rec. 143.]

Circuit Court, N. D. New York. May 12, 1866.

TAXATION—LICENSE TAX ON BANKS—CAPITAL—SURPLUS EARNINGS.

The term "capital," as used in the 1st subdivision of the 79th section of the internal revenue act of June 30, 1864 (13 Stat. 251), means, in reference to a bank whose charter fixes the amount of its capital, the amount of capital so fixed, and does not include the surplus earnings of such bank, so as to subject it to a license tax on such surplus earnings, as capital.

In equity. This was an application for a provisional injunction, to restrain [Theodore Townsend], a collector of internal revenue, from collecting a license tax. The bill was filed in a state court, by the plaintiff, a banking corporation doing business at Albany, New York, and the suit was removed by the defendant into this court, under the provisions of the 3d section of the act of March 3, 1833 (4 Stat. 633). The tax was claimed to be collectible under the provisions of the 1st subdivision of the 79th section of the act of June 30, 1864 (13 Stat. 251), which provided, that bankers using or employing a capital not exceeding the sum of $50,000, should pay $100 for each license, and that those using or employing a capital exceeding $50,000 should pay, for every additional $1,000, in excess of $50,000, $2. The charter originally granted to the corporation, under the state law, fixed its capital at $350,000. It applied for a banker's license under the national banking law of congress, on such capital of $350,000. The application was refused by the assessor, on the ground that the surplus earnings of the bank were not included as capital. The bank refused to pay a tax upon such surplus earnings, as capital, and the collector was proceeding to enforce the collection of such tax, when this suit was instituted.

John H. Reynolds, for plaintiff.

William A. Dart, Dist. Atty., for defendant.

NELSON, Circuit Justice. [2][The bill of complaint in this case was filed in the state court, to enjoin the defendant from collecting a license or tax on surplus capital claimed under the first sub-division of the 79th section of the act of congress passed June 30, 1864; and has been removed into this court under the 3d section of the act of March 3, 1833 (4 Stat. p. 633). The first sub-division of section 79 provides that bankers, using or employing capital not exceeding the sum of $50,000, shall pay $100 for each license; when using or employing a capital exceeding $50,000, for every additional $1,000, $2. The

charter of the bank in this case under the state law, fixes the capital at $350,000. Application was duly made for a license as a banker, under the act of congress, on a capital as above named, which was refused, on the ground that the surplus earnings of the bank were not included as capital. And the assessors and collector on refusal to submit to this view, thereupon proceeded to enforce the collection of the tax according to the law in such case made and provided, until restrained by the instillation of this suit and injunction.][2]

I am satisfied that the assessor and the collector have fallen into an error. The term "capital," as used in the 1st subdivision of the 79th section, means the amount of capital fixed by the charter. This amount cannot be altered, enlarged, or diminished, except by legislative authority. A surplus earned by the bank is no part of its capital under its charter, nor does the act of congress, either expressly or impliedly regard it as such. Besides, a tax is levied specifically on all dividends in scrip, or money declared due, &c., to stockholders, &c., and on all undistributed sums made or added, during the year, to the surplus or contingent funds of the bank, (section 120,) thereby treating and dealing with surplus earnings as separate and distinct from the capital of the bank. According to the construction claimed, the surplus earnings would be subject not only to all the tax that is imposed upon the capital of a bank, as such, but to five per centum, in addition, as surplus. I think that, if congress had intended thus to deal with this description of property, and to regard it both as a part of the capital of a bank, and, at the same time, as surplus earnings, and to be taxed in both aspects, it would have said so in plain words, and not have left the question to inconsistent and strained construction.

It has been argued that, inasmuch as the 110th section, speaks of the average amount of the capital of a bank, the word "capital" may embrace something more or less than the amount fixed by the charter. But, admitting this to be so, it by no means follows that it includes surplus earnings. The "capital" of a bank and its "surplus earnings" convey distinct and different ideas and meanings. But, on looking at this section, the reason of the phraseology is very obvious. The words are, "a duty of one-twenty-fourth of one per centum each month, &c., upon the average amount of the capital of any bank, &c., beyond the amount invested in United States bonds." This amount would necessarily be fluctuating and variable, depending on the time and the amount of the investment in the United States bonds, and might often require an average to be made of the amount of capital stock liable to be taxed. This same section provides, that in case of banks with branches, the duty shall be imposed,

&c., and "the amount of capital of each branch shall be considered to be the amount allotted to such branch"—not the amount including surplus earnings or any other addition. The same section also provides for a duty of one-sixth of one per centum each month upon the average amount of circulation, &c., beyond the amount of ninety per centum of the capital of the bank, &c. It will hardly be contended, on the part of the government, that the term "capital" here includes surplus earnings; and yet the claim would be as well founded as in the case under consideration. I may add, that, according to the construction contended for, the capital of the bank would be changing during the whole period of the license. It might become much greater than the amount for which a license was paid, for, only the surplus at the time the license was granted could be estimated.

Upon the whole, I am satisfied that the assessor erred in setting up the claim that the plaintiffs were bound to take out a license on the basis that the surplus earnings of the bank were a part of its capital, and that an injunction must be granted.