## UNITED STATES v. BANK OF MONTREAL.

*(Circuit Court, N. D. Illinois.  July 21, 1884.)*

1. REVENUE LAWS—BRANCH OF FOREIGN BANK IN UNITED STATES—TAXES—REV. ST. § 3407.

   A bank in Canada, which has established a branch in Chicago, must be held to carry on a banking business, within the definition of Rev. St. § 3407, it having a place of business where credits were opened by the deposit of money, subject to be paid or remitted upon draft, check, or order, and where bills of exchange were issued and sold.

2. SAME—REV. ST. § 3408.

   The meaning and intent of the whole of section 3408, Rev. St., was to assume that the active moneys employed by an incorporated bank were represented by its capital, and that the capital of a branch bank was the amount which was allotted to it, or which it was permitted to use, and the branch, for the purpose of this tax on capital, was deemed a separate entity.

3. SAME.

   As the Bank of Montreal can have no corporate existence in the United States, but only transacts business by comity, an agency established by it here must, for the purpose of the revenue laws, be considered the same as a private person engaged in the banking business, and pay the tax upon the amount of money employed in its business, without regard to whether it is, technically, capital or not.

Action to Recover Internal Revenue Tax.

*Richard H. Tuthill,* for complainant.

*Boutell, Waterman & Boutell,* for defendant.

BLODGETT, J.  This is a suit to recover internal revenue taxes

claimed to be due from defendant on the capital employed by defendant in the business of banking from the first of November, 1871, to the first of December, 1879. The defendant is a corporation created and existing under the laws of the dominion of Canada, having its principal place of business in the city of Montreal. Its chartered capital is $12,000,000, fully paid up, and it has a reserved fund of $5,000,000, and average deposits of about $17,000,000. On the first of November, 1871, it established a branch or agency in the city of Chicago, which has been continued to the present time. At the time this branch or agency was established here, its manager was informed that the sum of $100,000 had been assigned to his agency as capital. The business here has been the receiving of deposits to be paid out on draft or check of the depositors, buying and selling of domestic and foreign exchange, and the loaning of money on warehouse receipts for grain and provisions as collateral security,—the deposits averaging about $2,000,000 per month, and the profits on the business transacted here amounting to about $10,000,000. The $100,000 assigned as capital has been treated and known upon the books of the agency as "fixed capital," and the internal revenue regularly paid thereon. In June, 1881, an examination was had by F. J. Kinney, agent of the internal revenue bureau, of the books and accounts of the agency, from which it was ascertained that a much larger amount of money had been used in the business of this agency than the $100,000 capital allotted to it, and he reported the amount due for tax on capital, under the second paragraph of section 3408 of the Revised Statutes, which imposed a tax of one twenty-fourth of 1 per cent. per month upon the capital employed in banking, to be $83,775.56. After this report was received, an assessment was made and warrant issued for the collection of the portion of said tax which had accrued within two years, amounting to $24,543.88, and the amount of this assessment paid under protest. This suit is now brought to recover the balance of $59,229.68 of the tax so ascertained to be due, or reported to be due, by the examiner Kinney, and which it is claimed accrued between the establishment of the bank, December 1, 1871, and December 1, 1879. Several defenses to the right to recover this money are interposed: (1) That this Chicago agency is a branch of the parent bank in Montreal, and as such only liable to pay internal revenue taxes on the capital allotted to it by the parent bank, under the last clause of the third paragraph of section 3408; (2) that the funds used and loaned here cannot be considered capital of this bank, as they are sent here for temporary use, and liable to be withdrawn for use elsewhere at the will of the home management; (3) that the funds used here are not a part of the capital of the parent bank, but are part of its surplus funds, made up in part, at least, of the profits of this agency or branch; (4) that most of the funds by this branch are not employed in the business of banking, as defined in section 3407, Rev. St.

The assistant manager of this branch or agency, who was called as a witness on the trial, explained the course of business by saying, "When we see a chance to loan money here to good advantage, we notify the home office at Montreal, and they send it to us if they have it;" and his testimony shows that the average amount of money used for the first five months after this branch was established was over $400,000 per month; and from the time the agency was established there was a steady increase in the business, so that the amount of money employed in the business for the 12 months ending the thirty-first of May, 1879, was $1,496,635 per month. It will thus be seen that a large sum of money belonging to the parent bank was constantly employed in its business here. Whether the profits made in the business here were retained and used here, or whether those profits were remitted to Montreal as fast as made, and the money to be used here was sent from Montreal as wanted, does not seem to be material.

Section 3407 defines a bank and banker as follows:

Sec. 3407. "Every incorporated or other bank, and every person, firm, or company, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale, shall be regarded as a bank, or as a banker."

Certainly, the business carried on by the defendant here must be held to be a banking business within this definition. It had a "place of business" where credits were opened by the deposit of money, subject to be paid or remitted upon draft, check, or order, and where bills of exchange were issued and sold. The last clause of the third paragraph of section 3408 reads as follows:

"In the case of banks with branches, the tax herein provided shall be assessed upon the circulation of each branch severally, and the amount of capital of each branch shall be considered to be the amount allotted to it."

It is contended that the defendant is a bank with branches, within the meaning of the provision, and that only the sum of $100,000 capital was allotted to this branch by the parent bank. At the time the internal revenue system was adopted, in 1861, there were no national or United States banks, but in several of the states there existed what were called state banks, with power to establish branches. As I now recall the facts from memory, such banks existed in Ohio, Indiana, Missouri, and Iowa; and in the charters of these state banks there was a provision for establishing branches, and allotting or determining the amount of the capital of such branches; and I am of opinion that this provision as to the taxation of branch banks had special reference to the then-existing state banks and their branches, although the language used is comprehensive enough to apply to any future institutions of the same character, whether state or national. The evident meaning and intent of the whole section 3408 was to assume

that the active moneys employed by an incorporated bank was represented by its capital, and that the capital of a branch bank was the amount which was allotted to it, or which it was permitted to use, and the branch for the purpose of this tax on capital was deemed a separate entity. Ordinarily, what is known as the capital of a bank is the fund paid in by its shareholders on their capital stock, and this forms the basis upon which the business of the bank is conducted. The banks loan this money, or use it in the discount of commercial paper, in the purchase and sale of exchange, or, in the cases of banks of circulation, for the purpose of redeeming or securing their current notes; the profits of the business are, as a rule, after payment of expenses, distributed as dividends to shareholders. If, for any reason, all or part of the profits are retained by the bank, such retention may be only temporary, and are liable to be paid out in dividends at any time. So, as a basis of this internal revenue tax, the paid-up capital, as a fixed fund, was taken,—assuming that, as a rule, the capital represented the moneys which the bank used in its business. In this case, however, we have a foreign bank with the control of a very large amount of money establishing an agency here for the loaning of its money. It conducts through such agency all the business of a bank: receives deposits, buys and sells exchange, discounts notes and bills, and loans money. As the bank of Montreal can have no corporate existence here, but only transacts business by comity, this agency must, I think, for the purpose of this law, be considered the same as a private person engaged in the banking business, and pay the tax upon the amount of money it employs in its business, without regard to whether it is technically capital—that is, the fund contributed by its stockholders —or not. It sends its money here to be used in banking business, taking, perhaps, only that which it has accumulated from its home business and not been divided, or leaving here the profits realized from the business here. If the defendant has power under its charter to establish branches, that power would only authorize the establishment of branches within the jurisdiction of the sovereignty which created the corporation; that is, it cannot establish a branch with its corporate powers here, but the business it transacts here is more in the nature of an agency than that of a branch. And if any of the funds of the home corporation are sent here and used here in conducting a banking business, they should, in my opinion, pay the tax imposed under the second paragraph of section 3408, as capital employed by a person in the business of banking. It could not have been the intention of congress to allow banks of foreign countries to send their money here, to be loaned and used by an agent for the profit and benefit of such banks, without subjecting them to the same burdens imposed by the law on domestic banks and bankers.

It is further urged that the money used here by the defendant was not its capital, but was part of its surplus or reserve, and the decision of Mr. Justice NELSON in *Mechanics' & Farmers' Bank* v. *Townsend*, 5

Blatchf. 315, is cited in support of this position. It may be sufficient, to distinguish this case from the one at bar, to say that the question then under consideration was the meaning of the word "capital," as used in paragraph 1 of section 79 of the internal revenue act of June 30, 1864, and had application to the amount to be paid for license to do business as a bank or bankers; but it does not seem to me the rule given in that case is at all applicable to an agency like this of a foreign bank. If this defendant, being incorporated as a bank in a foreign country, had transacted all its business here, then its capital paid in, and forming the basis of its business, might be properly held to be the measure of its liability for this tax; but when such a corporation uses its surplus or reserve fund in conducting a banking business in this country, its capital, for the purposes of this tax, must, I think, be the amount of money it uses from month to month in the business here. It is said this surplus was only temporarily used here, but the proof shows how much was used each month, and the statute imposes a tax of one twenty-fourth of 1 per cent. per month on the money so used. If at the end of a month it had been withdrawn, and returned to the defendant in Montreal, all further liability would be at an end.

It is further urged that the business transacted by the defendant here was not a banking business, as defined by section 3407, because the money was not advanced or loaned on stocks, bonds, bullion, etc., but was loaned on the pledge or warehouse receipts for grain and provisions. The assistant manager for defendant says, in his testimony: "When we lent money we took a note and the warehouse receipts as collateral; we rely wholly on these collaterals."

Section 3407 declares, in effect, that every incorporated bank, and any firm or company having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced on bullion or stocks, bonds, etc., shall be regarded as a bank or banker. This defendant had a place of business here where credits were opened and deposits received and paid out on checks, so that it comes within one of the definitions of a bank or banker, and, being such, it is liable to pay the tax in question, without regard to what security it took for money loaned or advanced. So, also, a person or firm who advanced or loaned money on stocks, bonds, etc., is a banker; but when a banker—that is, one who comes within either of the definitions—loans money on other security than stock or bonds, that does not relieve him from this tax liability as to such business. Many banks, especially in the older eastern states, only loan money on notes secured by the name of an approved indorser or surety; but, if they are banks, it makes no difference what security they take for their loans, they are still liable to this tax.

I therefore conclude that the defendant is liable for the amount of tax claimed in this case,—$59,229.68,—with interest at 6 per cent.

from the time when such tax accrued. No computation of this interest was made at the time of the trial, but it may be made and submitted.

The proof also shows that the defendant paid $9,629.92 for taxes on clearing-house checks, on which it has been refunded $2,573.91, leaving a balance yet due of $7,056.01. As I understand the proof, after this tax had been paid several years the commissioner ruled that the banks were not liable to pay on these checks, and refunded what had accrued within two years, but refused to go further back, leaving this balance of $7,056.01 unpaid, and defendant now insists that this amount should be set off against the taxes now found due. This is an equitable action, and the inquiry really is how much is justly due the plaintiff; and I think it is conscionable and right to deduct this sum of overpaid tax on clearing-house checks from the tax on capital, as this claim and counter-claim accrued contemporaneously and out of the same business.