Argued January 17, decided February 4, rehearing denied March 25, 1913.

UNION PAC. LIFE INS. CO. v. FERGUSON.

(129 Pac. 529.)
(130 Pac. 978.)

**Insurance—Insurance Companies—"Capital"—"Capital Stock."**
1. Under Section 4610, L. O. L., providing that no domestic insurance corporation shall be permitted to do business until it shall have a paid-up unimpaired cash capital, equal to $100,000 United States gold coin, invested as therein required, a corporation, the par value of whose stock actually sold and fully paid up is less than $100,000, is not entitled to do business, although the stock actually sold was sold above par for $100,000 or more, since the word "capital," when used to mean "capital stock," as it does in that section, does not include surplus or profits subject to withdrawal in dividends.

**Insurance—Insurance Companies—Capital—Investment.**
2. Under Section 4610, L. O. L., providing that domestic insurance corporations shall not be permitted to do business until they shall have a paid-up unimpaired cash capital amounting to $100,000 invested in State or United States bonds, or notes secured by a first mortgage on real estate, the market value of which shall at least be double the amount of the loan, loans secured by mortgages on land, the value of which is not double the amount of the loan, should be counted as assets or valid loans to the amount of one-half of the value of the property.

**Mandamus—Demurrer to Alternative Writ—Sufficiency of Allegations.**
3. An alternative writ of mandamus to compel the Insurance Commissioner to issue a certificate permitting relator to do busi-

ness alleged "that said corporation has a paid-up, unimpaired cash capital exceeding $100,000," but in another paragraph it was alleged that the authorized capital stock was $100,000; that this was divided into 10,000 shares; that a certain proportion of these had been issued and fully paid for; that another portion had been subscribed for, but only partially paid for; that another portion had been subscribed, but no payment had been received; and that another portion had been issued, but no cash payment made thereon; and that a certain portion of the said capital stock had not been subscribed for or issued at all. Held, on demurrer to the writ, that the allegation that the corporation had a paid-up, unimpaired cash capital exceeding $100,000 should not be taken as true.

**Mandamus—Alternative Writ of Mandamus—Demurrer—Consideration on Appeal.**

4. Where, on demurrer to an alternative writ of mandamus to compel the State Insurance Commissioner to issue a certificate authorizing relator to carry on an insurance business in the State, the case is not tried on the demurrer alone, but facts were stipulated and the annual statement of the corporation submitted, the case, on appeal from a judgment granting a peremptory writ, will not be considered solely on the demurrer.

**Mandamus—Review—Introduction of Additional Evidence.**

5. On appeal from a judgment granting a peremptory writ of mandamus, affidavits as to the right of plaintiff to the writ will not be received, where they are not introduced in the court below, as the appellate court can only review the action of the circuit court, and cannot permit a new case to be made on the evidence.

From Marion:  WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a mandamus proceeding by the Union Pacific Life Insurance Company against J. W. Ferguson, as Insurance Commissioner of the State of Oregon. The action was commenced in October, 1912, by the issuance of an alternative writ of mandamus, in which it is recited that the plaintiff is incorporated under the laws of the State of Oregon for the transaction of a life insurance

business, with a capital stock of $100,000; that it has a paid-up, unimpaired cash capital exceeding $100,000, invested as required by Section 4610, L. O. L.; that the defendant, the State Insurance Commissioner, although application has been duly made therefor and the license tax paid, refuses to issue to plaintiff a certificate authorizing and permitting it to carry on an insurance business · in the State.

The defendant demurred to the writ, which was overruled, and on November 7, 1912, a peremptory writ was ordered to be issued, from which defendant has appealed. Thereafter, as the license ordered on November 7, 1912, to be issued by the Commissioner would have expired on December 31, 1912, on January 2, 1913, plaintiff caused to be issued herein another peremptory writ of mandamus, commanding defendant to issue to plaintiff a license for the year 1913, from which writ, also, defendant appealed.                                        REVERSED.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, and *Messrs. Joseph & Haney,* with oral arguments by *Mr. Crawford* and *Mr. Bert E. Haney.*

For respondent there was a brief over the names of *Messrs. Corliss & Skulason,* with oral arguments by *Mr. Guy C. H. Corliss* and *Mr. John A. Carson.*

MR. JUSTICE EAKIN delivered the opinion of the court.

Two principal questions are presented: (1) Does the recital in the writ show that plaintiff has a paid-up, unimpaired cash capital equal to $100,000 gold coin of the United States?  (2) Are the securities to which defendant objects such as are required by the statute? The term "capital" is used in varying senses by textwriters and in the decisions of the courts, which are well defined and distinguished in the text and notes in 5 Am.

& Eng. Enc. Law (2 ed.), p. 134, *et seq.,* in which it is said, at page 137:

" 'Capital' and 'capital stock' are frequently used interchangeably; 'capital stock' sometimes referring to the property and assets of the corporation, and 'capital' to the amount paid in or to be paid in by the stockholders. In general, profits and surplus earnings do not constitute 'capital stock,' or 'capital,' when the latter term is used in the sense of the capital stock of the corporation."

In *Mechanics' & Farmers' Bank of the City of Albany* v. *Townsend,* 5 Blatchf. 315 (Fed. Cas. No. 9,381), it is said that "capital" means the amount of capital fixed by charter, and does not include surplus earnings. Boon, Corporations, § 105, says that the word "capital," as used with respect to corporations, primarily signifies the aggregate of the sums subscribed for and either paid in, or agreed to be paid in, by the stockholders.

In *People ex rel. Union Trust Co.* v. *Coleman, et al.,* 126 N. Y. 433 (27 N. E. 818: 12 L. R. A. 762), it is said:

"The capital stock of a company is one thing; that of the shareholders is another and different thing. That of the company is simply its capital existing in money or property, or both; while that of the shareholders is representative, not merely of that existing and tangible capital, but also of surplus, of dividend earning power. * * While the nominal or par value of the capital stock and of the share stock are the same, the actual value is often widely different. The capital stock of the company may be wholly in cash or in property, or both, which may be counted and valued. It may have in addition a surplus, consisting of some accumulated and reserved fund, or of undivided profits, or both, but that surplus is no part of the company's capital stock. * * The capital cannot be divided and distributed; the surplus may be. But that surplus does enter into and form a part of the share stock, for that represents and absorbs into its own value surplus as well as capital."

It is said in *Kohl* v. *Lilienthal,* 81 Cal. 385 (22 Pac. 691: 6 L. R. A. 522), that:

" 'Capital stock,' as used in this section, is frequently otherwise and as well expressed by the simple word 'capital,' and means the money and property with which the company carries on its corporate business. * * It is vested in the corporation as a sacred trust for the protection of its creditors. * * This money and property of the corporation constitutes the actual capital of the company, to which all persons having dealings with the corporation, by means whereof they may become its creditors or become personally liable for its debts, * * look, and have a right to look, to determine the measure of the company's responsibility and of their security."

In *Bailey* v. *Clark,* 21 Wall. (U. S.) 286 (22 L. Ed. 651), it is said by Mr. Justice Field:

"When used with respect to the property of a corporation or association, the term [capital] has a settled meaning; it applies only to the property or means contributed by the stockholders as the fund or basis for the business or enterprise for which the corporation or association was formed."

In *Farrington* v. *Tennessee,* 95 U. S. 679, 686 (24 L. Ed. 558), it is said:

"The capital stock is the money paid, or authorized or required to be paid, in as the basis of the business of the bank, and the means of conducting its operations. * * If a large surplus be accumulated and laid by, that does not become a part of it. The amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal reduction without a like sanction. No power to increase or diminish it belongs inherently to the corporation. It is a trust fund, held by the corporation as a trustee."

In *State* v. *Morristown Fire Association,* 23 N. J. Law, 196. it is said:

"The phrase 'capital stock,' as employed in acts of incorporation, is never, that I am aware, used to indicate the value of the property of the company. It is very generally, if not universally, used to designate the amount of capital to be contributed by the stockholders for purposes of the corporation. * * The value of the stock may be greatly increased by surplus profits or be diminished by losses, but the amount of the capital stock remains the same."

The case of *Sun Mutual Ins. Co.* v. *Mayor of New York*, 4 Selden (N. Y.) 241, 250, holds that profits are not capital, except where, by contract or legislative act, they are directed to accumulate, as a basis of credit, and cannot be withdrawn. Undivided profits and surplus are part of the assets of the corporation while they remain, and in that sense are capital until withdrawn, but are subject to be withdrawn at any time; not so with the capital proper, which cannot be withdrawn. It is a trust fund, to stand as security to policyholders and to other creditors of the company.

1. Applying the law as thus stated to the facts in this case, the statute under consideration (Section 4610, L. O. L.) provides that the corporation shall not be permitted to do business "until such corporation shall have a paid-up unimpaired cash capital equal to $100,000 United States gold coin, which shall be invested in this State * * in State or United States bonds, bonds or notes secured by first mortgage upon first-class, otherwise improved, unincumbered real estate, the market value of which shall be at least double the amount invested in or loaned thereon. * * " This language clearly indicates that the term "capital" means the capital stock of the corporation, as fixed by its articles, which must not be impaired, but which is to be safely invested and remain as a fund for the security of policyholders, and therefore does not include surplus or profits, unless specially

made a part of the capital or set apart as a basis of credit, and not subject to withdrawal, and it clearly contemplates that the corporation shall have $100,000 of its capital stock fully paid up that cannot be thereafter impaired by withdrawals.

Plaintiff admits that its capital stock has not all been subscribed or paid up, and seeks to show a compliance with the statute by the fact that the stock actually sold has been sold for sums above par, and that the amount realized therefrom was largely in excess of $100,000, constituting a paid-up capital of $100,000. It is alleged that 7,541 shares have been sold and fully paid up, and that other shares have been sold, though not fully paid for; but it is not shown how much has been paid, so we will assume that the 7,541 shares sold for $100,000, $24,590 of which was profit and neither capital nor capital stock within the meaning of the statute, because it is profits accumulated in the sale of stock, and subject to withdrawal at any time in dividends. The two items of interest mentioned in the statement of the assets of the company are of the same class and cannot be included as part of the $100,000 paid-up capital, which must be invested. This $100,000, mentioned in the statute, must be the trust fund that cannot be withdrawn or in any manner diverted by the corporation. It is the fund with which the corporation transacts its business, and stands as security to the policyholders. It does not include profits or surplus until they have been made capital in some legal way.

2. As to the five loans secured by mortgage, to which the Commissioner objects, we think in each case they should be counted as assets or valid loans to the amount of one-half of the value of the property included in the mortgage. For the reason that plaintiff has not a paid-up, unimpaired cash capital equal to $100,000 in United States gold coin, we find that defendant was not entitled

to a certificate or license at the time the application was made therefor.

The judgment, of date November 7, 1912, and the peremptory writ of mandamus issued on January 3, 1913, are reversed, and the action is dismissed.

REVERSED: DISMISSED.

Decided March 25, 1913.

## ON PETITION FOR REHEARING.

(130 Pac. 978.)

MR. JUSTICE EAKIN delivered the opinion of the court.

3, 4. Upon the motion for rehearing it is contended that, as the sufficiency of the writ of mandamus was tested by demurrer, the allegation of the writ "that said corporation has a paid-up, unimpaired cash capital exceeding $100,000," must be taken as true; but counsel overlooked the fact that the fourth paragraph of the writ says:

"The authorized capital stock of the corporation is $100,000, divided into 10,000 shares of the par value of $10 a share; that $7,541^{19}/_{30}$ shares of said stock have been issued and fully paid for; that 416 shares of said stock have been subscribed for, but only partially paid for; that 55 shares have been issued and only partly paid for; that 64 shares of said stock have been subscribed for, but no payment on account of said subscription has yet been made; that 25 shares have been issued, but no cash payment made thereon; that $1898^{11}/_{30}$ shares of said capital stock have not been subscribed for or issued at all."

The case was not tried in the circuit court on the demurrer alone, nor was it so submitted here, but certain facts were stipulated, which include the annual statement of the corporation to the commission, as shown by the bill of exceptions. Therefore the record before us shows that the corporation did not have a paid-up cash capital of $100,000.

5. In connection with the motion plaintiff presents proofs by affidavits that the stockholders and directors, on February 27, 1913, by resolution duly adopted by them, set apart as a basis of credit for policyholders and creditors of the corporation all assets of the corporation, amounting to $106,600 and being invested in mortgage loans and bonds, which include surplus and undivided profits, and declared the same capital of the corporation with like effect as though the said assets represented $100,000 capital stock subscribed and fully paid up at not less than par, and that it shall not be subject to withdrawal. On the basis of this new showing we are asked to issue the writ of mandamus to the Commissioner, requiring him to issue the license. This we deem beyond the power or province of this court. The case being before us on appeal, we can only review the action of the circuit court, and cannot permit a new case to be made here on the evidence. The showing presented here might be a proper showing before the Commissioner upon application for the issuance of a license. It is held in the case of *Sun Mutual Ins. Co.* v. *Mayor of New York*, 8 N. Y. 250:

"In ordinary co-partnerships, where profits, by the agreement of the partners, are directed to accumulate as a basis of credit or of more extended operations in a particular business, they become capital; and in the case before us the legislature has provided for an accumulation to the amount of $500,000; and in addition the agents of the corporation, in 1846, determined, by a formal resolution, as they rightfully could do, that no division of the profits shall be made until the accumulated earnings shall exceed $1,000,000. These accumulations became capital."

But, as this question is not properly before us, it is not necessary for us to decide it now.

The petition is denied.

REVERSED: REHEARING DENIED.