Submitted on brief of appellant November 21, 1922, affirmed February 20, 1923.

## AMERICAN CENTRAL INSURANCE CO. *v.* WELLER.

(212 Pac. 803.)

**Insurance—When Mortgagee Obtains Insurance, Liability Generally Enforceable Only by Him.**

1. Where a mortgagee effects insurance upon his interest in the mortgaged property, paying the premiums himself, the contract is between the mortgagee and the insurer, and, upon the happening of the event insured against, the liability of the insurer is a fixed one only as to the mortgagee, and, as a general rule, he alone can enforce such liability.

Subrogation—Creature of Courts of Equity for Purpose of Doing Complete Justice.

2. The doctrine of subrogation does not owe its origin to statute or custom, but is a creature of courts of equity having for its basis the doing of complete and perfect justice between the parties without regard to form.

Subrogation—Applied According to Equity and Good Conscience.

3. The doctrine of subrogation will be applied or not according to the dictates of equity and good conscience, or considerations of public policy, and will be allowed in all cases where the equities of the case demand it.

Insurance—Insurer Ordinarily Subrogated Pro Tanto to Insured's Rights Against Person Causing Loss.

4. On payment of a loss an insurer, as a general rule, acquires the right to be subrogated *pro tanto* to any right of action which insured may have against any third person whose wrongful act or neglect caused the loss.

Insurance—Insurer of Automobile upon Payment to Assignee of Conditional Sale Contract of Loss from Buyer's Conversion not Subrogated to Rights of Assignee Against Seller as Guarantor of Contract.

5. Where one selling automobile upon conditional contract assigned the contract to a bank and guaranteed payment and procured insurance, naming the buyer as assured, and also insuring against conversion, with the loss payable to the bank or the buyer, as their interests might appear, and the buyer thereafter converted the automobile, the insurer, upon payment of the loss to the bank, was not subrogated to rights of the bank against the seller on the guaranty, as it insured the automobile and not the debt, and it would be inequitable and unconscionable to hold the seller responsible for the conversion.

Insurance—Payment by Insurer Held to Satisfy Guaranteed Debt so That It Could not be Assigned to the Insurer.

6. Where one selling an automobile on conditional contract, assigning the contract to a bank, and guaranteeing payment, procured insurance against conversion payable to the bank, and the buyer afterwards converted the automobile, the insurer's payment of the amount due on the policy to the bank satisfied the debt to that amount as against the guarantor, and it could not be assigned by the bank to the insurance company.

Appeal and Error—Failure to Make Findings not Considered, When not Shown by Transcript or Abstract.

7. Under Section 554, Or. L., requiring appellant to file transcript or abstract, and Section 556, providing for review only of

3. Right of insurer, upon paying mortgage under mortgage clause in policy issued to owner of equity of redemption, to be subrogated to rights of mortgagee, see notes in Ann. Cas. 1917B, 1135; L. R. A. 1916A, 559.

4. Right of insurance company to enforce subrogation in its own name, see notes in 1 Ann. Cas. 885; 18 Ann. Cas. 710; Ann. Cas. 1918A, 834.

questions of law appearing on the transcript, and the preface to the rules of the Supreme Court, appellant's objection that the court failed to make and file findings of fact, as required by Section 158, will not be considered, where neither the transcript nor the printed abstract of record shows such failure.

**Appeal and Error—Assertion of Error in Brief Insufficient if It Does not Appear from Record or Bill of Exceptions.**

8.  An error must be apparent on the face of the record or be made to appear by bill of exceptions to have it considered by the appellate court, and it is not enough to assert in the brief that there is an error in the trial court's judgment.

**Judgment—Presumptions in Favor of Regularity and Validity of Judgment of Court of General Jurisdiction.**

9.  Where judgment is entered by court of general jurisdiction all presumptions are in favor of its regularity and validity.

From Multnomah: W. N. GATENS, Judge.

In Banc.

This is an action in which the plaintiff, Insurance Company, having paid to Ashley & Rumelin, Bankers, a loss of $300 resulting from the conversion of a certain automobile, seeks to be subrogated to the rights of Ashley & Rumelin, Bankers, against the defendant E. R. Weller, and to recover from the defendant the loss which it paid. The cause was tried to the court without a jury. At the close of plaintiff's testimony the defendant moved for a "directed verdict and judgment." The motion was granted, and a judgment entered in favor of defendant, from which plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. W. B. Shively* and *Mr. Henry Bauer*.

For respondent there was a brief over the names of *Mr. J. M. Hickson* and *Mr. Robert R. Rankin*.

BEAN, J.—The facts in the case are substantially as follows: On May 23, 1918, the defendant Weller,

who is a dealer in automobiles, sold an automobile to one Leon Miller upon a conditional contract of sale executed in the customary form. This contract recited the purchase price at $502.40, admitted payment of $150 at the time of the execution of the contract, and provided for the payment of the balance in monthly installments of $52.40 one month from date and $50 each month thereafter until paid. On May 27, 1918, the defendant sold the contract for cash at a discount to Ashley & Rumelin, Bankers, and assigned the contract to them, and guaranteed to the bank the payment of all monthly installments and all moneys due or to become due under the contract. At the time of the transaction Weller arranged to have the automobile insured, and on May 29, 1918, the plaintiff issued an insurance policy in which L. Miller was named as the assured and the automobile was insured against fire and theft. The policy recited that the assured had purchased the car for $500, and had fully paid for the same except "$350 balance monthly payments." To the policy was attached a conversion clause in favor of Ashley & Rumelin, Bankers, reciting that the automobile had been sold under a conditional sales contract, loss "payable to the said vendor and the said vendee as their respective interests may appear." In consideration of $2 additional premium the company insured the vendor against all the direct loss or damage caused by the wrongful conversion of the automobile by the vendee Miller.

Shortly after the issuance of the insurance policy and before any further payments were made on the purchase price, the automobile was converted by Leon Miller, and no trace was thereafter found either of the automobile or of Miller. Thereupon the bank

called upon the insurance company to make good its loss resulting from the conversion. The insurance company paid the bank $300, and took an assignment of the conditional contract of sale and the guaranty of Weller, refusing to pay the balance of $52.40 for the reason, as stated in plaintiff's brief, that the latter sum "did not in reality represent any part of the purchase price of the automobile but represented brokerage charges, insurance premium and cost of transfer of license fee which had been tacked on and added to the purchase price of the automobile by the defendant Weller." After receiving the $300 from the insurance company the bank required the defendant Weller under his guaranty to pay the balance of $52.40 and also the interest due under the contract, which Weller did.

The plaintiff submits that after the issuance of the policy the bank was in this position: "It had legal title to the automobile under contract of sale to Leon Miller and was secured as to the balance of the purchase price under the contract in two ways—first, by the guaranty of the defendant Weller; and second, by the insurance policy issued by the plaintiff insurance company."

The insurance company claims in this action that it has a right to be subrogated to the rights of Ashley & Rumelin, Bankers, and is therefore entitled to recover the $300 which it paid from the defendant Weller on his guaranty. It is fairly shown by the testimony on behalf of the plaintiff, that the policy of insurance was issued upon the request of the defendant Weller and that he paid the insurance premium. The defendant therefore claims that the plaintiff insurance company is not entitled to the right of subrogation as against him.

The ruling upon the motion for a judgment by the trial court shows that the court allowed the motion for the main reason that the defendant Weller was instrumental in obtaining the insurance policy and paid the premium. The payment of the premium by Weller on July 15, 1918, is shown by the receipt for the premium, with many other premiums of like kind, given by the Coast Underwriters Agency, the agent of the plaintiff, to Weller. There is practically no question in regard to the facts. If the defendant Weller is liable under the facts stated it was error to grant the motion. If Weller is not liable the motion and judgment were properly granted.

The plaintiff appropriately cites the law in regard to the right of insurer to subrogation where the policy is issued to a mortgagee, or mortgagor, with a loss payable clause in favor of the mortgagee. Ashley & Rumelin, Bankers, held the legal title to the machine as security for the balance of the payment therefor, and were in a position analogous to that of a mortgagee while Miller's position under the conditional contract of sale was analogous to that of a mortgagor. E. R. Weller, as alleged in plaintiff's complaint, sold the car to Miller upon a conditional contract of sale, discounted and assigned the contract to Ashley & Rumelin, and guaranteed the payment of the balance of the purchase price. Weller was in no way responsible for the loss or conversion of the car. He is not accused of any wrongful act. The insurance company insured the car and for a valuable consideration insured Ashley & Rumelin, the assignee of the contract of sale, against a wrongful conversion thereof by Miller. The company did not insure the payment of the debt due from Miller to the bank. The liability of the insurer to Ashley & Rumelin is simply

measured by the balance due on the contract. In case of an honest loss by Miller the amount to be paid by the insurance company would not have been changed by the payment of a large part, or all of the monthly payments: the only difference would have been in dividing the insurance money or a change of payee. The company insured the car and not the debt.

1. Plaintiff cites 5 Joyce on Insurance, Section 3563, which states the rule, that the mortgagee may effect insurance upon his interest as such in the mortgaged property, he himself paying the premiums and being chargeable with the same, and in case of loss may recover. The question thus arises as to the respective rights of the mortgagor, mortgagee, and the insurer. In such case the contract is between the mortgagee and the insurer, under which a certain consideration having passed from the former to the latter, the latter agrees to indemnify the former on the happening of a certain event. Therefore, upon the happening of such event the liability of the insurer is a fixed one as to the mortgagee, and to no other, and it is a liability which, as a general rule he alone can enforce. If in such case the mortgagee first proceeds to enforce his rights under the policy, and the amount received equals the amount of the debt, the insurer should be entitled to be subrogated to the right of the former under the mortgage. This section of Joyce further states as follows:

"Instances may, however, occur where the mortgagor may be entitled to the benefit of the insurance effected by the mortgagee in the name of the latter; as where it appears that the insurance was effected by the mortgagee, acting in reality as agent for the mortgagor, the latter paying or being chargeable with the premiums, and there being nothing in the policy in-

consistent with the mortgagor receiving the benefit of such insurance.''

In the present case the assignor of the mortgage effected the insurance and paid the premium.

Plaintiff also cites *Milwaukee Mechanics' Ins. Co. v. Ramsey,* 76 Or. 570, 574 (149 Pac. 542, Ann. Cas. 1917B, 1132, L. R. A. 1916A, 556), which is authority for the rule in regard to the rights of an insurer where the mortgagee procures the insurance at his own expense, in substance as above stated, and also for the further proposition, that if insured property is burned by the tortious act of one not a party to the policy, the insurer paying the loss to anyone to whom by the terms of the policy payment must be made, is subrogated *pro tanto* to the chose in action the payee has against the tort-feasor. In that opinion Mr. Justice BURNETT clearly states the reason for the two rules referred to in the Ramsey case. Ramsey, the mortgagor, procured insurance making the loss payable to the bank, the mortgagee, as its interest might appear, otherwise to the insured. The policy was rendered nugatory as to the interest of the mortgagor, Ramsey, by reason of a change of ownership without an indorsement on the policy, or permission of the company. After referring to the policy Mr. Justice BURNETT states:

"By it the company agrees with Ramsey, and not with another, to pay a certain designated person in case of a loss. It does not agree to pay Ramsey's debt. The application to his obligation of the proceeds of the insurance in case of loss is a matter between Ramsey and the bank. What became of the money is no concern of the plaintiff after it paid the bank. It did not insure the debt. It insured the building. If Ramsey had burned the house, the mortgagee would have had an action against him for the tort, in that he damaged it by depreciating the value

of the mortgaged property. * * It is not charged in the complaint that Ramsey was in any way to blame for the fire. He incurred no liability on that account to the company or to the bank.''

While the facts in the case at hand are different from those in the Ramsey case, the principles enunciated, and the reasoning of the opinion in the latter case are applicable.

2, 3. The doctrine of subrogation has long been an established branch of equity jurisprudence. It does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one should be enriched by another's loss and may be invoked wherever justice demands its application, in opposition to the technical rules of law. The right of subrogation depends upon the facts and circumstances of each particular case, to which must be applied the principles of justice: 25 R. C. L., p. 1313, § 2. In Section 55, page 1372, of the same volume we read:

''One who has indemnified another in pursuance of his obligation so to do succeeds to, and is entitled to, a cession of all the means of redress held by the party indemnified against the party who has occasioned the loss.''

4. It is unquestionably the general rule that on payment of a loss, the insurer acquires the right to be subrogated *pro tanto* to any right of action which the insured may have against any third person whose

wrongful act or neglect caused the loss: 14 R. C. L., p. 1404, § 568, note.

5. The facts in the case at hand do not bring the case within the rules above stated, or the authorities cited by counsel for plaintiff. The plaintiff for value assumed liability for conversion of the machine by Miller. It insured the automobile and not the debt due after the assignment to Ashley & Rumelin, who practically stood in the shoes of E. R. Weller, the vendor of the automobile. For the reason that a portion of the debt included the premium of insurance paid by Weller, the insurance company refused to compensate the bank for that amount. Under the circumstances of this case it would be inequitable and unconscionable to require, in substance, that E. R. Weller be responsible for the conversion of the automobile by Miller. Weller by his assignment of the contract did not assume liability for, or insure the bank against the loss by theft, or conversion of the car, either by Miller or anyone else. Weller was by virtue of the assignment only secondarily liable for the payment of the debt to the bank. The plaintiff assumed liability for loss of the car, and by a special clause attached to the policy assumed liability for the conversion of the car by Miller. The plaintiff is entitled to be subrogated to the right of the bank as to any claim against Miller. If the car had been found the next day after plaintiff had paid the loss it would have been entitled to the benefit thereof to the extent of its expenditure.

If Weller by his contract of assignment had become responsible to the bank for the conversion of the automobile by Miller, or if Weller had in any way been the cause of the loss occasioned by the conduct of

Miller, then the plaintiff would be in an entirely different position.

In *Chicago etc. R. Co.* v. *Pullman,* 139 U. S. 79 (35 L. Ed. 97, 11 Sup. Ct. Rep. 490, see, also, Rose's U. S. Notes), cited by plaintiff, it appears the Pullman Southern Car Company hired ten cars to the railroad company for a certain compensation. The railroad company assumed responsibility for damages to the cars occasioned by "accident or casualty," while the sleeping-car company assumed responsibility for loss caused by defective heating and lighting apparatus furnished by it. Two of the cars were entirely destroyed by fire originating "from a cause unknown." At the time of the fire one of the cars was on the railroad track under a depot shed used by the railroad company to store cars when not in actual transit, and the other was in a repair-shop of the railroad company assigned to the exclusive use of and in the possession of the Pullman Company for repairs, where it had been for six months, and except for the fire would have been in condition for use by the railroad company the next day. Both of the lost cars were insured by the Pullman Company. After the fire the insurance companies paid $19,000 in settlement of the loss. Action was brought by the Pullman Company against the railroad company to recover the value of the burned cars, under an agreement between it and the insurance companies that the recovery should be equally divided by them. There was a verdict and judgment for plaintiff. It was held: (1) The losses were within the meaning of the contract "occasioned by accident or casualty." (2) As the syllabus reads,

"The collection of the insurance money did not impair the right of the Pullman Company to recover the

amount of the loss according to the contract with the railroad company. Upon payment of the loss, or to the extent of any payment by them on account of the loss, the insurance companies were subrogated to the rights of the insured and could in its name, or in their joint names, maintain an action against the railroad company for indemnity, if the latter was liable to the insured for the loss of the cars; this, because the liability of the railroad company was, in legal effect, first and principal, and that of the insurer secondary, not in order of time but in order of ultimate liability.''

Further, it was held that the railroad company was responsible for the loss of one of the cars, but not for the one in the exclusive possession of the Pullman Company.

If, in the present case, Weller had stipulated with the bank that he would be responsible for the ''theft or conversion'' of the car, then the case referred to at length would be authority for the right of plaintiff to subrogation. As it is, the opinion indicates the reverse. In other words, according to the Pullman Company case, in order for an insurer having paid a loss to have the right of subrogation by virtue of a contract between the insured and a third party, such contract should show the primary liability of such third person for the loss of the property insured. The plaintiff insurance company was primarily liable to the bank for the conversion of the car by virtue of its policy, which, to all intent and purpose, defendant purchased and caused to be issued to Ashley & Rumelin.

The policy of insurance contains a subrogation clause which plainly indicated the right of the insurance company in this respect. It reads in part as follows:

"Subrogation. If this company shall claim that the loss or damage was caused by the act or neglect of any person or corporation, private or municipal, this Company shall, on payment of the loss be subrogated to the extent of such payment to all right of recovery by the Assured for the loss resulting therefrom, and such right shall be assigned to this Company by the Assured on receiving such payment."

The facts of this case do not fall within the provisions of the subrogation clause of the policy.

As stated above, Weller was a guarantor of the payment of the contract price, or in the position of a surety, and was secondarily liable for the debt. The contract of insurance did not provide for insuring the car only to the amount of the value after deducting what might be collected from the guarantor, but for the value thereof to the amount of $350. The liability of the insurer is primary.

In L. R. A. 1916A, page 563, note as to rights under subrogation clause, we find a principle enunciated which is applicable here. It is as follows:

"In *Merchants' Ins. Co.* v. *Story* (1896), 13 Tex. Civ. App. 124, 35 S. W. 68, a mortgagor who took out a policy and conveyed to a vendee who had assumed the mortgage debt was held to be entitled, under the facts, to the rights of a surety as to the mortgagee and insurer, and the vendee, who had exchanged the original policy for a new one, was held to be the mortgagor within the meaning of a subrogation clause in the second policy.

"And it was held that as, under the subrogation clause, the mortgagee and its assigns were entitled to the benefit of the insurance, the sureties were also entitled to the same benefit in the absence of an express provision excluding them, and that such sureties were protected notwithstanding the forfeiture of the policy as to the original mortgagor's vendee. *Ibid.* (Tex.)

"And it was held that the rights of the sureties could not be defeated merely by the prior purchase of the mortgage by the insurer. *Ibid.* The court, in stating its conclusions, said, in part: 'In construing the contract and determining the relative priorities as between the sureties for the debt and the insurance company, it is a material consideration that, while the liability of the sureties is clearly secondary, the liability of the insurance company is clearly primary, except to the extent that the contract of insurance expressly shows it to be otherwise, the premium received by the insurance company being considered a full equivalent for the risk assumed by it, and the original mortgagors, who now claim the benefit of the insurance, having paid the premium, and the contract for insurance being a burden on the property, which passed with it.' "

37 Cyc. 370, reads: The right of subrogation, as a general rule

"is broad enough to include every instance in which one party is required to pay a debt for which another is *primarily* answerable, and which, in equity and good conscience, ought to be discharged by the latter, and is the mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it, and to relieve him whom none but the creditor could ask to pay." (Italics ours.)

6. Weller as guarantor comes within the class that should be relieved under the rule mentioned. No one but the creditor, Ashley & Rumelin, could ask him to pay. When the insurance company paid the $300 on the policy the debt was satisfied to that amount as to Weller, and could not be assigned.

7. There is no brief filed on behalf of defendant. Objection to the judgment is made in plaintiff's brief, claiming that the trial court failed to make and file findings of facts as required by the statute, Section

158, Or. L.   There is no assignment of error in this regard contained in appellant's printed abstract of record as required by rule number eleven of this court.   No mention is made of the matter in the bill of exceptions.

Neither the transcript, nor the printed abstract of the record, filed in this court shows that no findings of fact and conclusions of law were made.   Section 554, Or. L., requires the appellant to file "a transcript or such an abstract as the law or the rules of the appellate court may require, of so much of the record as may be necessary intelligibly to present the question to be decided by the appellate tribunal, together with the copy of the judgment or decree appealed from, the notice of appeal and proof of service thereof, and of the undertaking on appeal; * * *" Section 556, Or. L., directs that upon an appeal from a judgment, the same shall only be reviewed as to questions of law appearing upon the transcript.   The appellant is required to file a transcript or abstract of no more of the judgment-roll than is necessary properly to present the question to be decided: See Preface to Rules, 100 Or. 739, 740.

8. It is the invariable rule in this state, that an error must be apparent on the face of the record, or must be made to appear by the bill of exceptions, in order to have it considered by the appellate court.   It is not enough merely to assert in the brief that there is an error in the judgment of the trial court: *O'Connor* v. *Van Hoy*, 29 Or. 505 (45 Pac. 762); *Union Pac. Ins. Co.* v. *Ferguson*, 64 Or. 395, 403 (129 Pac. 529, 130 Pac. 978, 43 L. R. A. (N. S.) 958); *Columbia Realty Inv. Co.* v. *Alameda Land Co.*, 87 Or. 277, 289 (168 Pac. 64, 440).

9. Where a judgment is entered by a court of general jurisdiction all presumptions are in favor of its regularity and validity. The error claimed in the brief is not shown by the record.

Finding no error in the record the judgment appealed from is affirmed.                    AFFIRMED.

Mr. Justice BURNETT dissents.

BURNETT, J., Dissenting.—In this case the defendant Weller, a dealer in automobiles, sold a car to one Miller, taking from him a conditional sales contract, which Weller signed as party of the first part and Miller as party of the second part. One of the conditions was that "the rights and obligations of the parties hereto shall be the same as though this contract was a negotiable instrument." By the contract Miller took possession of the property and agreed to, and did, pay $150 in cash, and further stipulated to pay the balance of the amount owing in monthly installments. The contract price was $502.40, made up, as the testimony shows, of the actual purchase price of the car, $19.50 as premium on a policy of insurance on the automobile, the state fee for license, and brokerage fees on the subsequent negotiation of the contract to the banking firm of Ashley & Rumelin by Weller. The agreement contained another provision requiring Miller to keep the property insured against loss by fire, theft, wrongful conversion and embezzlement; loss, if any, payable to the vendor as his interest might appear; and in case of failure of the vendee to comply with this clause, the vendor might obtain the insurance, in which case the premium should become immediately due and payable by the vendee to the vendor and would be added to the amount due under the agreement. The testimony is

undisputed that all of this was accomplished in advance by including the amount of the premium in the total contract price, the payment of $150, and the delivery of the machine into the possession of Miller. Within four days after the execution of the contract Weller sold the same to the banking firm and caused a policy in the plaintiff company to be issued in favor of Miller, loss, if any, payable to the bank, which was named in the policy as the vendor of the car. Of the premium, $2 was applied to the insurance of the bank against damage caused by the wrongful conversion of the automobile by Miller. There was no provision in the policy in favor of Weller; neither was he mentioned therein. In other words, the policy was conditioned as if the bank and not Weller had sold the car to Miller.

When Weller sold the contract to the bank he executed and delivered to it as part of the transaction the following assignment:

"For value received, the receipt of which is hereby acknowledged, I hereby assign all my right, title and interest in and to the within contract and to the property therein described and all of the moneys payable thereunder to Ashley & Rumelin, Bankers, and hereby guarantee the payment of all moneys due or to become due under the said contract, and also the full performance by the second party therein named of all the second party's promises and covenants; and I hereby consent that the time of payment of any or all of the said installments therein provided may be extended by Ashley & Rumelin, Bankers, and I further guarantee the payment of all sums of money due or to become due by reason of such extensions, and in the event that there shall be a breach of any of the terms of said contract or default in the payment of any sums provided therein, I agree to perform said contract or make such payments, as the case may

be, as though I were liable thereon, and therefore hereby waiving all notice and demands.

"Dated the 27th day of May, 1918.

"(Signed) E. R. WELLER."

Miller took the car and absconded from the state with it to parts unknown, without having paid the balance due on the contract. Under these circumstances the bank called upon the plaintiff to pay the insurance, which it did to the extent of $300. Thereupon the bank executed and delivered to the plaintiff the following subrogation receipt:

"Received of the American Central Insurance Co., of St. Louis, Mo., the sum of three hundred dollars, being in full settlement of all claims and demands for loss and damage on the 5th day of August, 1918, to the property insured under policy No. 35717, issued at the Portland, Ore., agency of said company, and in consideration of such payment the undersigned hereby assigns and transfers to said company each and all claims and demands against E. R. Weller on his assignment and guaranty as set forth in the attached contract, and against any other party, person, persons, property or corporation, arising from or in any manner connected with such loss and damage, and the undersigned hereby assigns and transfers to said company the attached contract and all of the interest of the undersigned therein (and said company is hereby subrogated in the place of and to the claims and demands of the undersigned against said party, person, persons, property or corporation, in the premises), to the extent of the amount above named, and the said company is hereby authorized and empowered to sue, compromise or settle in its name or otherwise to the extent of the money paid as aforesaid.

"The undersigned covenant that they have not released or discharged any such claim or demand against such other party or parties, and that they will furnish to said company any and all papers and

information in their possession, necessary for the proper prosecution of such claim.

"Dated at Portland, Ore., this 7th day of February, 1919.

"Witness ————
        "————

                "ASHLEY & RUMELIN, Bankers,
                    "By M. A. M. ASHLEY,
                            "Cashier."

As stated, the insurance company paid but $300 on the policy, contending that the policy did not cover the premium, the license. fee or the brokerage commission, but only the purchase price of the car. This left a balance of $52.40, which Weller paid to the bank, together with interest amounting to $10.63.

The insurance company sues Weller on his guaranty, to recover the $300 it paid to the bank. Weller denies liability and further claims repayment to him of the money he paid to the bank, on the ground that he disbursed it for and on account of the plaintiff. His claim in that respect is denied by the reply.

At the trial, before the court without a jury, at the conclusion of the plaintiff's testimony, as disclosed by the abstract, "the defendant moved the court for a directed verdict and for a judgment against the plaintiff." This motion was allowed and judgment was entered as follows:

"It is now hereby ordered and adjudged that the plaintiff herein recover nothing, and that the defendant have judgment of and against the plaintiff and that defendant also have judgment against the plaintiff for his costs and disbursements herein taxed at $ .————."

The trial judge did not make any findings of fact or conclusions of law. The motion, being for a directed verdict and judgment in favor of the defend-

ant, cannot be treated rightfully as a motion for a nonsuit, because in an application for a nonsuit, no verdict is ever called for. A judgment for nonsuit is rendered in cases where there is no issue in the testimony and the cause is not one sufficient to be submitted to the jury: Or. L., § 182. The effect of a judgment of nonsuit does not bar another action for the same cause: Or. L., § 184. Calling as it did, for a verdict, an element unknown in nonsuits, and for a judgment for the defendant, the motion contemplated a deliverance of the court which would bar another action for the same cause, and such was the judgment actually entered in this case. This was a trial of an issue of fact by the court without a jury, governed by Section 158, Or. L., reading thus:

"Upon the trial of an issue of fact by the court, its decision shall be given in writing, and filed with the clerk during the term or within twenty days thereafter. The decision shall state the facts found, and the conclusions of law separately, without reason therefor. Such decision shall be entered in the journal, and judgment entered thereon accordingly. The court may deliver any argument or reason in support of such decision, either orally, or in writing, separate from the decision, and file the same with the clerk"; and Section 159 as follows: "The order of proceedings on a trial by the court shall be the same as provided in trials by jury. The finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reasons, as far as applicable, and a new trial granted."

Both before and since the amendment to the judiciary section of the Constitution it has been held under the statutes quoted that failure of the court to make findings of fact and conclusions of law where the case is tried before the court without a jury, renders its judgment void. The statute referred to has

been in force since the making of the Code in 1862. That the requirement is binding as well since as it was before the amendment, is enforced by the Constitution itself in its amended form, wherein it says:

"The courts, jurisdiction, and judicial system of Oregon except so far as expressly changed by this amendment, shall remain as at present constituted, until otherwise provided by law." Article VII, § 2-b, Constitution.

In *Clackamas Southern Ry. Co.* v. *Vick*, 72 Or. 580 (144 Pac. 84), the precedents are reviewed by Mr. Justice MOORE, who also in his opinion considered the amended Article VII of the Constitution, arriving at the conclusion that a judgment rendered under the circumstances of the present case is void. The precedent is followed in *School Dist. No. 30* v. *Alameda Construction Co.*, 87 Or. 132 (169 Pac. 507, 788), and in *Turner* v. *Cyrus*, 91 Or. 462 (179 Pac. 279). In brief, the constitutional amendment requires compliance with the then existing judicial system, including the duty of the trial judge where a jury is waived to make findings of fact and conclusions of law, the absence of which will render his judgment void.

Another reason why the motion should not be treated as one for nonsuit may be found by a consideration of the testimony in the bill of exceptions. The contention for the defendant seems to be that he paid the premium and hence is entitled to the benefit of the insurance. The testimony shows without dispute that he charged the premium to Miller as part of the total amount covered by the contract; and that the latter not only signed the contract which by agreement of the parties was considered a negotiable instrument, but he also paid Weller $150 in cash, more than enough to cover the premium and other extra

charges.  It was held in *Cranston* v. *West Coast Life Ins. Co.*, 72 Or. 116 (142 Pac. 762), that where the insured in a life insurance policy had given his note for the amount of the premium to one who was acting as soliciting agent for the insurance company, it was sufficient as evidence of payment of premium to prevent a judgment for nonsuit.  In that instance the insured was a minor and had given his note for the amount of the premium to the soliciting agent without naming him as agent or in any way referring to the company in the note.  He afterwards repudiated the note and refused to pay it to the then holder. The note was discounted to a third party, but none of the proceeds ever reached the company.  If in that instance the transaction was sufficient to prevent a nonsuit as to payment of the premium, so here, where Miller not only gave his note or contract for the payment of an amount including the premium, but also paid actual money, it certainly ought to be enough to prevent a nonsuit, so far as the case turns upon who paid the premium, Miller or Weller.  The judgment of the Circuit Court was therefore clearly void for want of findings of fact and conclusions of law, especially where the defendant was claiming under a policy to which he was not a party and for which he had paid nothing.

As before stated, when the company paid the bank, the latter assigned to it not only the contract itself but also all claim against Weller on his guaranty of the payment by Miller of the amount due on the contract.  The plaintiff is therefore claiming not necessarily by a pure subrogation, but as an assignee of Weller's contract of guaranty agreeing to pay the amounts due on the contract, waiving all notice and demand.  It is said that the case of *Milwaukee*

*Mechanics' Ins. Co.* v. *Ramsey,* 76 Or. 570 (149 Pac. 542, Ann. Cas. 1917B, 1132, L. R. A. 1916A, 556), controls this case in favor of the defendant. The Ramsey case differs from the present one in two important particulars: first, the fire loss in that case which the company insured against was an honest loss occurring without the fault of Ramsey, the insured, while here Miller himself, the insured, caused the loss by his conversion of the car. Second, in the Ramsey case the company did not get an assignment of Ramsey's note and mortgage and hence did not and could not sue on them, while here the company has an assignment of the Miller contract and of the Weller guaranty, and is entitled to sue on either of them. There, the insurance company had insured Ramsey's laundry, loss, if any, payable to the Tillamook County Bank. Afterwards Ramsey violated the terms of the policy by making a change in the ownership of the property without the consent of the company, thus destroying his interest in the policy. The fire occurred without any fault of Ramsey. In an action on the policy by himself and the bank against the insurance company the judgment went in favor of the bank and against Ramsey, he failing to recover because of the change in the ownership. The insurance company in that action paid the judgment to the bank and demanded assignment to it of Ramsey's note and mortgage, which was refused by the bank. The company then, claiming to be subrogated to the rights of the bank against Ramsey, sued him to recover the amount it had paid the bank. Recovery was denied because the company had not insured the debt but had insured the building, which was lost without Ramsey's fault.

In this case, Miller, the insured, himself has committed the act occasioning the loss under the policy.

In other words, he has himself converted the property. The Ramsey case would be similar in that respect, if Ramsey himself had burned his laundry, but he did not. Here Miller has done the act equivalent to Ramsey's supposed act of arson. Moreover, in the Ramsey case the insurance company failed to secure an assignment to it of Ramsey's commercial paper. In this instance the insurance company is the assignee not only of Miller's commercial paper but also Weller's guaranty of the same.

The plaintiff's rights, therefore, do not depend upon subrogation. It has the same rights that any other assignee of those papers would have. If the automobile had been stolen by some stranger to the transaction and the company had paid the insurance, then it would be subrobated to the rights of the bank against that stranger and would have a chose in action against the stranger sounding in tort and not on a contract. But that is not this case. Miller has never paid his debt, unless it can be said that by stealing his own automobile he has discharged that obligation. Weller's contract was not to insure the automobile or to prevent its conversion by Miller. The plain reading of his guaranty is to pay the debt, and as long as Miller's debt remains unliquidated, Weller's guaranty of the same still lives. Miller has not paid what he agreed to pay. Neither has Weller paid his guaranty obligation underwriting Miller's promise.

If Miller could show that his own conversion of the car renders the plaintiff liable to pay him on the policy, he might plead it as a counterclaim in plaintiff's action against him on the contract of which the plaintiff is the assignee, and so work out a discharge of his debt. This, of course, would discharge Weller's guaranty. But under the admissions of the plead-

ings there is no defense for Miller against his liability on the contract. He is liable to the assignee thereon.

It is no concern of Weller's what induced the bank to assign the contract and his guaranty of it to the plaintiff. So far as that is concerned, "the assignee of a chose in action in Oregon may maintain an action thereon in his own name although he paid no consideration therefor": *Dawson* v. *Pogue,* 18 Or. 94 (22 Pac. 637, 6 L. R. A. 176); *Gregoire* v. *Rourke,* 28 Or. 275 (42 Pac. 996); *First Nat. Bank* v. *Miller,* 48 Or. 587, 592 (87 Pac. 892); *King* v. *Miller,* 53 Or. 53, 62 (97 Pac. 542).

Weller is not a party to the policy and cannot claim under it. Whatever he paid was derived from Miller's cash and promise to pay. At the most Weller acted only as the agent of Miller in procuring the policy, for it was obtained in Miller's name and with his money or his promise to pay. While Miller's liability on the contract remains, Weller's guaranty of its payment is still in force and he is liable on it to its holder. Miller's contract, not having been discharged by any payment on his part, was a living chose in action and the plaintiff had the right to buy it and the guaranty and to recover on either of them.

Having taken an assignment of Miller's contract, suppose the insurance company sues him for the money due upon it (not for the tort of stealing the car). Will it be a defense for him to say: "I insured your assignor against my theft of the car, which insurance you yourself have paid and so extinguished my liability on the contract which you bought from the bank"? Manifestly this would be no answer for Miller. How then can it be a defense for

his guarantor who has agreed to pay this very debt which has not been paid?

The insurance as such is *functus officio,* having been paid by the insurer to the insured, and is no longer a factor to be regarded in litigation on the contract. There has never been a time when the company owed Miller anything that could be applied on his debt, for it did not insure him against his own theft of his own car. Neither has the company ever owed any debt or duty to Weller, for it made no contract with him and he has never done anything which would subrogate him to any chose in action against the company or anyone else. Weller accredited Miller by putting the car in the latter's possession and guaranteeing his debt, thus placing him in position to defraud others. To allow Weller to escape from his guaranty under such circumstances would not only permit him to reap where he has not sown, but also would deprive the company of a valuable chose in action on the guaranty and substitute for it a probably worthless claim against Miller on his tort. Weller should make good the loss he enabled Miller to inflict.

Subrogation is granted to one who has paid some debt or obligation for which he is not primarily liable, and remits him to the enforcement in his own right of some unliquidated obligation of another from the collection of which he may reimburse himself. Until Weller has paid the debt he guaranteed, he has no defense against enforcement of his obligation. Neither has he a right to subrogation in any form. Even if he pays the debt in full, he will not be subrogated to any chose in action against the company, for it has paid its liability once. He would be subrogated only to his remedy against Miller either for his tort of stealing the car or on the original contract.

Every precedent cited which gives to an indorsing mortgagee the benefit of insurance effected by the mortgagor upon the mortgaged property is an instance of an honest loss resulting in a situation where the debtor has legitimately created a fund for the payment of his debt. In such circumstances the mortgagor or those standing in his shoes would have a right of action against the insurer and of course it would inure to the benefit of the mortgagee who indorsed the paper of the mortgagor. Here the company has never been under any obligation to the principal debtor. As to Weller, Miller has not created any fund for the payment of his debt and there is nothing inuring to Weller's benefit. The fallacy of the opposing argument lies in the failure to distinguish between an honest loss and one that is dishonest and in extending the company's liability to those with whom it did not contract and to whom it owed no duty here involved.

The judgment of the Circuit Court ought to be reversed on the merits as well as for want of findings.

---

Motion to dismiss denied December 6, 1921, second motion to dismiss denied February 7, 1922; argued January 4, reversed February 20, 1923.