Argued April 13, modified May 9, 1916.

# UNITED STATES FIDELITY CO. v. UNITED STATES NAT. BANK.

### (157 Pac. 155.)

**Subrogation—Principal and Surety.**

1. Where the surety pays a liability on the bond, it becomes subrogated to all the rights of the person indemnified.

**Banks and Banking—Duties of Bank—Wrongful Payment.**

2. Where a bank received deposits from one individual in his capacity as an individual and in his capacity as a guardian, it engaged to pay his checks only from the proper fund, and not indiscriminately from either.

> [As to deposits in bank in name of "trustee," see note in 82 Am. St. Rep. 520.]

**Banks and Banking—Wrongful Payment—Liability.**

3. Since a bank must respond to the checks of the party with whom it contracts acting in the character he stipulates, it will be protected if it honors his check properly drawn, though it be on a trust fund, and he squanders the money, if it has no knowledge or notice of the character of the fund.

**Banks and Banking—Wrongful Payment—Liability.**

4. Where a bank received deposits from one man as an individual and as guardian, and he later closed his individual account, and the bank thereafter honored his individual checks, charging them against

the guardianship fund, it was liable to the surety on his bond which paid the amount of the defalcation for the amount of the fund paid out on individual checks.

From Lane: George F. Skipworth, Judge.

Department 1.   Statement by Mr. Justice Burnett.

This is an action by the United States Fidelity & Guaranty Company, a Corporation, against the United States National Bank of Eugene, Oregon. The following are the facts:

In March and April, 1913, and afterward until his removal from that trust, James M. Bridges was the duly appointed, qualified and acting guardian of the persons and estates of his two minor children, Mildred and Gladys Bridges. The plaintiff was his surety on the usual statutory bond in the sum of $1,000. As such guardian, Bridges deposited with the defendant bank to the credit of "James M. Bridges, Guardian," $1,060 belonging to his wards, and in that form the bank opened an account crediting it with that amount. About the same time Bridges deposited with the bank to his private credit $500 of his own funds, which the defendant credited to his separate individual account. Afterward he drew checks against his private account, signed in his individual name, aggregating $306.50, and accepted from the defendant a draft of $193.50, totaling $500, thus closing that account. Meanwhile he had drawn on the guardian account, signing the checks "James M. Bridges, Guardian," or what all concede is equivalent thereto, in the sum of $443.10. Subsequent to the closing of his private account, and while in San Francisco, he drew checks upon the defendant bank in favor of a liquor concern of that city signed "James M. Bridges," without the addition of the word "guardian" or any other indication that they were to be paid out of the trust fund. These last-

named checks footed up $605. They reached the defendant at its home office in Eugene, Oregon, through commercial channels. It paid them and charged the full amount to the guardian account which, with the $443.10 already checked out by the guardian signing in that character, reduced it to $11.90.

Bridges wasted all these funds in a drunken debauch in San Francisco, and none of any of the money was expended in any wise for the benefit of the wards. At the time the accounts were opened the bank knew that the $1,060 amount was the property of the minor children and was held by their guardian in trust for them, and credited it on its books to "James M. Bridges, Guardian," as stated. The bank had no knowledge, however, that Bridges was squandering the money with which it paid his checks. By proceedings in the court appointing him the guardian was removed, and another appointed, to whom the plaintiff paid the amount of the defalcation of Bridges as former guardian taking an assignment from the new appointee under order of court, of all rights of action in favor of the trustee against the bank growing out of the transactions already narrated. A like transfer to the plaintiff was secured from the former guardian. On this state of facts the plaintiff commenced this action to recover from the bank $616.90, which it is claimed is the proper balance remaining in the guardian account with the defendant, being composed of the admitted residue of $11.90 and the amount of $605 included in the individual checks of Bridges paid out of the trust fund.

The defendant tendered $11.90, but denied its liability for the remaining $605. In addition to testimony showing without controversy that the facts were

as already portrayed, there was read in evidence this extract from a stipulation between the parties:

"That the seventeen checks aggregating six hundred five ($605) dollars in dispute herein, and which checks are hereto attached, were signed by James M. Bridges, the identical person who was the guardian of Mildred Bridges and Gladys Bridges, minors, and that the said James M. Bridges obtained the money upon the said checks, and, after having obtained the said money aggregating six hundred five ($605) dollars, the proceeds were not used for the benefit of said wards, but that said James M. Bridges misappropriated the same and dissipated the said funds."

Both parties having rested, the court directed a verdict for the plaintiff in the sum of only $11.90 on motion of the defendant and from the ensuing judgment the plaintiff appeals.                                           MODIFIED.

For appellant there was a brief and an oral argument by *Mr. A. N. Orcutt.*

For respondent there was a brief over the names of *Messrs. Foster & Hamilton,* with an oral argument by *Mr. O. H. Foster.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Having, as surety, paid to the new guardian the amount of its principal's defalcation, the plaintiff is subrogated to all the rights of the trustee to whom the payment was made, for the purpose of reimbursing its loss; so that, if the last guardian had been entitled to call upon the defendant to pay the balance of the guardian account with it, the plaintiff may do so itself by virtue of the subrogation. This is true as a matter of law, and in this instance is placed beyond controversy by the assignment mentioned. No

contention is urged on this point. It rests upon a well-recognized principle of law for the protection of sureties who are compelled to make good the defaults of those for whom they have given bonds.

2. Indisputably and to the knowledge of the defendant, the $1,060 deposit was the property of the wards. By crediting it to the separate account of "James M. Bridges, Guardian," the bank engaged to pay it out only on the order of that representative person, and not upon the check of some natural person. There was a natural person and there was a representative person. The former was "James M. Bridges," and the latter was "James M. Bridges, Guardian," and, so far as their financial affairs were concerned, they were as distinct from each other in their relations to the depositary bank as Jones and Brown or any other two of its customers having no common monetary interest.

3. It is true that the guardian might have negotiated the original check drawn in his favor for the amount due to his wards and deposited the proceeds to his private credit in the bank cashing it or in any other institution of the kind, and the depositary, having no further knowledge, would be protected in paying the checks drawn against the deposit and signed in the personal name of the individual, even though he had also the office of guardian. This is upon the principle that the bank is bound to respond to the checks of the party with whom it contracts acting in the character in which he stipulates. This is the teaching of these precedents cited by the defendant: *Munnerlyn* v. *Augusta Savings Bank,* 88 Ga. 333 (14 S. E. 554, 30 Am. St. Rep. 159) ; *Coleman* v. *First National Bank,* 94 Tex. 605 (63 S. W. 867, 86 Am. St. Rep. 871) ; *Interstate National Bank* v. *Claxton,* 97 Tex. 569 (80 S. W. 604, 104 Am. St. Rep. 885, 65 L. R. A. 820) ; *Safe*

*Deposit & Trust Co.* v. *Diamond National Bank,* 194
Pa. 334 (44 Atl. 1064) ; *Batchelder* v. *Central National
Bank,* 188 Mass. 25 (73 N. E. 1024) ; *Hood* v. *Kensing-
ton National Bank,* 230 Pa. 508 (79 Atl. 714). Such
cases justify the defendant in this instance in paying
out of the guardian account the checks signed ''James
M. Bridges, Guardian,'' although he afterward abused
his trust and dissipated the funds thus obtained.

4. But the transactions in the instant case are not
cast in that mold. In receiving the separate deposits
and opening the two accounts the bank contracted dis-
connectedly with two distinct individuals. With each
of them, by operation of law, it covenanted to keep
the deposit and pay it out only upon the check of the
party with whom the bank contracted. It is not pre-
tended that either Bridges, natural person, or Bridges,
guardian, ever gave any directions to pay the deposit
of one to the order of the other or attempted to make
any new or different contract about the trust fund.
The original agreement remained unimpaired through
all the course of the events involved, and the bank
had no right to change the contract on its own initia-
tive in the absence of the other party's consent.

As said by Mr. Justice Matthews in *National Bank*
v. *Insurance Co.,* 104 U. S. 54, 64 (26 L. Ed. 693) :

''The contract between the bank and the depositor
is that the former will pay according to the checks of
the latter, and, when drawn in proper form, the bank
is bound to presume that the trustee is in the course
of lawfully performing his duty, and to honor them
accordingly. But when against a bank account, des-
ignated as one kept by the depositor in a fiduciary
character, the bank seeks to assert its lien as a banker
for a personal obligation of the depositor known to
have been contracted for his private benefit, it must
be held as having notice that the fund represented by
the account is not the individual property of the de-

positor, if it is shown to consist, in whole or in part, of funds held by him in a trust relation.''

The same distinction is noted in *Munnerlyn* v. *Augusta Savings Bank*, 88 Ga. 333 (14 S. E. 554, 30 Am. St. Rep. 159), and others of the defendant's citations. The doctrine is applicable to the defendant in the following manner: Bridges, natural person, had exhausted his private account, and it had been closed. His personal checks, drawn upon the bank thereafter, constituted overdrafts which the drawee might have rejected with impunity. It did not do so, but, on the contrary, honored them, and immediately reimbursed itself by charging the amounts to the guardian account. It had no more right to do this than it had to pay the check of Jones out of Brown's deposit. It is conceded that, if Bridges had borrowed money of the bank on his individual note, the bank could not hold out the amount due thereon when the guardian account came on for settlement. The substance of what the defendant did is just the same, if not worse; for it extended credit to Bridges on his individual overdrafts and immediately appropriated the money of others to their payment. Having actual knowledge of the distinction between the two funds, and having expressly contracted with that feature in view with two different characters separately, the bank is bound by its own agreement which it violated in applying the guardian fund to the extinction of the credit it extended to Bridges on his overdrafts. The stipulation, as well as the whole course of the defendant's contention, leaves out of the calculation the plain distinction between Bridges in his private character and Bridges in his fiduciary relation. The difference was preserved by all concerned in the original agreement. It has never been lawfully changed, and must be respected

now.   The deposit by the guardian remained as a trust fund belonging to the wards until legally drawn out upon the check of the guardian acting in that capacity. The bank, by its wrongful act in paying out the funds on the private checks of another, made it possible for that other to squander the money of the wards, and thus became in effect a joint tort-feasor liable for the resulting defalcation.   A kindred case is *De War* v. *First National Bank, ante,* p. 260 (156 Pac. 1038), where, in an opinion by Mr. Justice Benson, the defendant bank was condemned for the act of its president in taking the money of one depositor and applying it to cover the overdraft of another.   The defendant, however, secured a reversal on another ground.

All the evidence is before us in the bill of exceptions. There is no dispute about the facts.   The only contention involved is the legal conclusion to be drawn from them.   Under such circumstances, as empowered by Article VII, Section 3, of the Constitution, we direct that a judgment be entered in the Circuit Court in favor of the plaintiff and against the defendant for $616.90, together with costs and disbursements.

The judgment of the trial court is modified accordingly, and the cause is remanded for that purpose.

Modified.

Mr. Chief Justice Moore, Mr. Justice Benson and Mr. Justice McBride concur.