## Louisville Trust Company v. Royal Indemnity Company.

(Decided June 21, 1929.)

WM. MARSHALL BULLITT, LEO T. WOLFORD, R. LEE BLACK-WELL, GARNETT & VAN WINKLE, and BRUCE & BULLITT for appellant.

WOODWARD, HAMILTON, WARFIELD & HOBSON and HENRY G. BEDINGER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

From July 19, 1920, to July 2, 1925, W. G. Sluder was employed by the Credit Clearing House Adjustment Corporation as the manager of its Louisville branch. His fidelity as manager was insured by two bonds issued by the Royal Indemnity Company to the Credit Clearing House Adjustment Corporation. As manager of the Louisville office, Sluder was instructed to deposit checks in the name of the corporation in the Citizens' Union National Bank of Louisville. This course he followed until March 12, 1925, when he began depositing to his own credit in the Louisville Trust Company checks payable to his employer and its clients. Between that day and July 2, 1925, he deposited numerous checks aggregating $9,113.28. This money he withdrew on his personal checks and used for his own purposes. Pursuant to its contract the Royal Indemnity Company paid to the Credit Clearing House Adjustment Corporation the amount of Sluder's defalcation, and several weeks later took from it an assignment of its claim.

Pleading the above facts, the Royal Indemnity Company brought this suit against the Louisville Trust Company to recover the amount it had been required to pay. On a trial before a jury, the defendant declined to introduce any evidence, and, at the conclusion of the evidence for plaintiff, the court directed the jury to return a verdict in its favor for the full amount sued for. From that judgment this appeal is prosecuted.

We do not regard the assignment taken some time after the indemnity company had discharged its obligation as adding anything to the surety's right of action

against the trust company. Godfrey v. Alcorn, 215 Ky. 465, 284 S. W. 1094, 51 A. L. R. 925. In the circumstances, its case depends altogether on the doctrine of subrogation, which is essentially a creature of equity, and is called into play only when it is necessary to bring about an equitable adjustment between the parties. This is not a case where the surety company on paying the principal's debt is subrogated to the rights of the obligee against the principal. Baker v. Fidelity & Deposit Co. of Maryland, 24 Ky. Law Rep. 2196, 73 S. W. 1025. Nor is it a case where the surety of a trustee who paid the amount of its principal's default is permitted to follow the misappropriated trust fund and recover from a bank the amount thereof which had been paid to the bank with knowledge of its trust character in settlement of a personal debt which the trustee owed the bank. Farmers' & Traders' Bank of Shelbyville v. Fidelity & Deposit Co. of Maryland, 108 Ky. 384, 56 S. W. 671, 22 Ky. Law Rep. 22. Nor is it a case where the surety takes over the uncompleted contract of its principal, and is held to be subrogated to all the rights of the principal in preference to the attaching creditors of the principal. Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931. The case is one between a paid surety and the trust company, whose negligence it is claimed caused the loss. It must be conceded that the rule that makes the trust company liable to the Credit Clearing House Adjustment Corporation is, to say the least, a hard one.

In its beginning the doctrine was applied with respect to the deposits of public officers, guardians, and trustees, in whose selection or discharge the insured beneficiary or cestui que trust had no voice. It is now applied to the defalcation of agents subject in all respects to the will of their principal. Under that rule the bank must look to the sources of the deposits of all its depositors and see to it that the depositor does not pay out money except in the capacity in which the money should have been deposited. Since the duty thus imposed will operate as a poor check on an agent who has made up his mind to defraud his employer, it would seem that the proximate cause of the loss is the dishonesty of the agent rather than a want of care on the part of the bank. Therefore, as between the employer and the bank, there is much to be said in favor of the position that the loss should fall on the employer who selects an unfaithful agent, and thus vouches for his integrity, rather than on

the bank whose officers in many instances are called upon daily to examine and keep account of a large number of checks, a duty which, to say the least, operates as a severe strain on ordinary care. Though the rule as between the bank and the employer is settled, yet, in view of its extreme harshness, we are not inclined to go further and hold that the equities of a surety that has been paid to bear the loss are superior to those of the bank that receives no benefit from the transaction. Such has been our previous ruling on the subject (American Bonding Co. v. First National Bank of Covington, 27 Ky. Law Rep. 393, 85 S. W. 190), and, upon a reconsideration of the question, we see no reason to change our view. It follows that appellant and not appellee was entitled to a peremptory instruction.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.

Whole court sitting, with the exception of JUDGE DIETZMAN.