**AMERICAN SURETY CO. et al. v. BANK
OF CALIFORNIA.
No. 10188.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 16, 1943.

Plowden Stott, Cake, Jaureguy & Tooze, E. L. McDougal, and Maurice D. Sussman, all of Portland, Or., for appellants.

Borden Wood, of Portland, Or. (McCamant, King & Wood and Robert S. Miller, all of Portland, Or., of counsel), for appellee.

Before MATHEWS, STEPHENS and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

In a suit brought by American Surety Company and E. L. McDougal against the Bank of California, the District Court gave judgment in favor of defendant bank. The plaintiffs appeal.

Plaintiff American Surety Company is a New York corporation, and plaintiff E. L. McDougal, a citizen of Oregon. Defendant Bank of California (hereinafter referred to as "Bank") is a national banking association, incorporated under the laws of the United States, with its principal place of business at San Francisco, California, and with a branch bank in Portland, Oregon.

Interior Warehouse Company (hereinafter referred to as "Interior"), an Oregon corporation, was a depositor in defendant Bank's Portland branch. Crowe, a bookkeeper of Interior, was charged with the duty of preparing payroll checks. Over a period of years Crowe fraudulently made out checks to former employees, to present employees paid in some other manner, and to fictitious persons. The checks were duly signed by authorized officials of Interior and were returned to Crowe, who forged the payees' names, cashed the checks and used the money so received for his own purposes. Detection was delayed through Crowe's falsification of Interior's books and by his own checking of the bank statements.

Interior was insured by American Surety Company and the underwriters at Lloyds of London (hereinafter called Insurers), against loss sustained through the dishonesty of its employees. The Insurers paid Interior the full amount of the loss and took assignments of Interior's claim against Bank. Subsequently, Lloyds assigned its claim to plaintiff E. L. McDougal, who joined American Surety Company in suit herein against Bank to recover their payments to Interior, and the United States District Court of the Judicial District of Oregon accepted jurisdiction.

The Jurisdictional Question.

■ ■ The citizenship of the Bank, for purposes of determining the jurisdiction of the federal court, depends upon the interpretation of 28 U.S.C.A. § 41 (16) " * * * And all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located." No case defining "located", in this connection, has come to our

attention. The quotation from the cited section reveals a departure from the old rule that the incorporation of national banking associations under the laws of the United States is a basis for federal jurisdiction. Continental Nat. Bank of Memphis v. Buford, 191 U.S. 119, 24 S.Ct. 54, 48 L.Ed. 119. There would appear to be a close analogy between such a bank and a corporation national in scope. The citizenship of a corporation is fixed by its principal place of business, a rule which prevails even though it extends its field of endeavor into other states under the sanction of the laws of such other states. St. Louis & San Francisco Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802; Southern Ry. Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078. In addition, a logical interpretation of the phraseology of 28 U.S.C.A. § 41 (16) leads to the conclusion that the "States in which they [national banking associations] are respectively located" are those states in which their principal places of business are maintained. If the Congress had intended to provide that a national banking institution should be given the privilege and should carry the duties of citizenship in various states upon the basis of branch business offices being established therein, it would be a noteworthy departure from the general rule, and more likely than not Congress would have plainly stated such intent. The mere suggestion of such a provision in the law implies constitutional questions of great academic interest.

█ In the course of the oral argument to this court the jurisdiction of the District Court was raised as to the cause of action of American Surety Company, it having paid less than $3,000 on the loss caused by Crowe's dishonesty. We hold that the District Court had jurisdiction upon the ground that both claims were based upon one subject matter, which concerned the recovery of more than the jurisdictional requirement of $3,000. For further exposition of the matter, see Troy Bank v. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81.

█ The trial court was right in holding that defendant is a citizen only of the state in which its principal place of business is located, the State of California. Diversity of citizenship having been established and the controversy having been shown to be greater in value than $3,000, jurisdiction lay in the trial court from which this appeal is brought.

### Bases for the Claimed Bank Liability to Insurers.

Insurers contend that Bank incurred liability to Interior in breaching its contract with its depositor by charging the account of the latter with the amounts dispersed on checks bearing forged indorsements. They maintain, further, that they became subrogated to the rights of Interior against the Bank when they reimbursed Interior in the sum of money paid upon the fraudulent checks. Unless both contentions are correct, Insurers are not entitled to relief in the premises under the doctrine of subrogation.

Assuming, but not deciding, that Interior, had it not been compensated for its loss by Insurers, could have recovered directly from Bank, now that it has been so compensated, it does not seem to us that the facts of this case are sufficient to raise the equitable right of subrogation in favor of Insurers as against Bank. As we shall hereinafter show, in these circumstances the assignments of Interior's claim in no way improve Insurers' position.

█ The right of subrogation is a creature of equity, applicable where one person is required to pay a debt for which another is primarily responsible, and which the latter should in equity discharge. In theory one person is substituted to the claim of another, but only when the equities as between the parties preponderate in favor of the plaintiff. That is, a surety's right of recovery from a third party through subrogation does not follow, as of course, upon proof that the losing but recompensed party could have recovered from the third party. Accordingly, subrogation will not operate against an innocent person wronged by a principal's fraud. A surety may pursue the independent right of action of the original creditor against a third person, but it must appear that said third person participated in the wrongful act involved or that he was negligent, for the right to recover from a third person is merely conditional in contrast to the right to recover from the principal which is absolute. The equities of the one asking for subrogation must be superior to those of his adversary. If the equities are equal or if the defendant has the greater equity,

subrogation will not be applied to shift the loss.

■ The basic principles set forth above are consistently reiterated in connection with the right of subrogation, and are clearly supported by the majority of reported decisions. The cases, dealing with the surety's alleged right of subrogation to the claim of the original creditor against a third party with whom the indemnitor is not in privity, indicate that the result reached depends upon a careful analysis of the facts involved. Obviously, we do not have before us an indemnity agreement running to any person injured, as so often appears in surety contracts of public officials, rather than to specifically named persons. Cases with the turning point as to subrogation correctly or incorrectly resting upon that fact should not be allowed to confuse the situation. The same may be said as to many opinions to be found in the books which erroneously, as we think, fail to note that the touchstone upon which subrogation, as to parties not under contractual obligations between themselves, depends is the superior equity as between the surety and the claimed subrogee.

In the instant case the surety contracts are confined to Insurers and Interior. Any right of recovery against third parties for money paid Interior by Insurers under the contracts must rest solely upon a weighing of the equities as between the third parties and Insurers. Such equities generally depend upon participation in wrongdoing, negligence, or knowledge, although we do not mean to say that these expressions cover the gamut of equities which may or should be considered.

In Fidelity & Deposit Co. v. Oklahoma State Bank, 10 Cir., 77 F.2d 734, 738, the company's agent converted company funds to his own use. The surety, which had indemnified the company on account of losses due to defaults of the agent, paid the company in accordance with its contract, then sued the bank which had paid company funds to the agent as an individual. The case was held a proper one for subrogation because of the bank's negligence, as it should have known at the outset that the agent was dealing with it purely as an agent. "Its course of dealing with Jordan and the facts and circumstances of which it was informed were sufficient to render it liable for not making inquiry."

The Insurers cite with confidence, Martin v. Federal Surety Co., 8 Cir., 58 F.2d 79. Therein, defendants bought state timber from one possessing a permit to take under a state statute, which declared that until fully paid for, title to all timber cut under a state permit should remain in the state. When the permittee failed to pay, the surety on his bond guaranteeing payment to the state paid the amount due to the state, then sued defendants for conversion on the ground that it was subrogated to the state's remedy against defendants. Subrogation was allowed in favor of the surety.

The court declared on page 89 of 58 F. 2d: "We think that if appellants participated in the original wrong of Erskine by which liability on his part to the state was created, or if they were guilty of negligence in entering into and carrying out the arrangement had with him for the purchase of the timber, appellee would be subrogated to the right of the state to recover against them in an action of conversion." The court then pointed out that the timber was state timber and that the permittee had no title until payment was completed. It stressed the fact that under a state statute the defendants were charged with notice of information on file in the auditor's office and consequently with notice that the due sums had not been paid the state. Finally, the court concluded that defendants were negligent in the existing circumstances.

Notice is also an element of United States Fidelity & G. Co. v. United Nat. Bank, 80 Or. 361, 157 P. 155, L.R.A.1916E, 610. A trustee had two accounts in defendant bank, one in his name as guardian, and one in his name as an individual. After the funds in the latter were exhausted, the bank charged checks signed by the trustee as an individual to his guardianship account. The surety on the trustee's bond recompensed the new trustee in the amount of the loss, took an assignment of the claim against the bank, and brought action against the bank. Judgment was decreed in favor of the surety, which was held subrogated to the rights of the new trustee. The court stated that the bank had actual knowledge of the distinction between the two funds, had contracted with two unlike individuals, and consequently was bound by its agreement.

■ In all of the situations outlined defendants had actual knowledge of facts sufficient to put them on notice of the wrongdoing and in a way, therefore, were

implicated in the wrong done. In the instant case Bank was liable, if at all, not because it was a wrongdoer but because of its absolute liability on an implied contract to repay money on deposit only to the persons to whose order the checks are drawn. The checks improvised by Crowe were cashed in the ordinary course of Bank's business. No indication is found that Bank knew any facts which would suggest the fraud of an employee of its depositor. Insurers, on the other hand, expressly contracted to secure Interior against losses caused by a dishonest employee, such as Crowe. They accepted the responsibility for such losses for a compensation, the premiums paid to them, which they have retained. Both they and Bank are innocent of any wrongdoing, although all were liable to Interior (under assumption of Bank's liability to Interior) on the basis of independent contract obligations—the implied contract of Bank to pay only to those entitled, and the contracts of Insurers to indemnify against losses caused by a defalcating employee. Since Insurers expressly, voluntarily and for a compensation guaranteed against loss in the exact situation involved, the equity in the situation cannot lie in favor of Insurers and against Bank for the payment made. Commercial Casualty Ins. Co. v. Petroleum Pipe Line Co., 10 Cir., 83 F.2d 412; Washington Mechanics' Sav. Bank v. District Title Ins. Co., 62 App.D.C. 194, 65 F.2d 827; New York Title & Mortg. Co. v. First National Bank, 8 Cir., 51 F.2d 485, 77 A.L.R. 1052; Meyers v. Bank of America N. T. & S: Ass'n, 11 Cal.2d 92, 77 P.2d 1084; Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71; Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510; American Central Ins. Co. v. Weller, 106 Or. 494, 212 P. 803.

That the law of Oregon is in accord with the principles above set forth, is indicated by American Central Ins. Co. v. Weller, 106 Or. 494, 212 P. 803. There, the State Supreme Court held that the insurer's payment of the amount due on a policy, protecting the assignee of a conditional sales contract against loss caused by conversion of an automobile, satisfied the debt in that amount as against defendant, the guarantor of the debt by the assignment of the sales contract to the assignee. The court determined that the rules as to subrogation had no application to the situation in question and narrowly limited that application. Admittedly, the facts vary widely from those in the instant case, but the court's limitation of the subrogation doctrine is significant.

 At first glance, Chicago, St. Louis, etc., R. Co. v. Pullman, etc., Co., 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97, cited by Insurers, seems contrary to the result reached in the case at bar. There, the insurance company paid the Pullman Company the amount due on a fire insurance policy covering a sleeping car, and subsequently was allowed to recover the said amount by subrogation to the rights of the Pullman Company against the railroad. The railroad was using the car under a contract with the Pullman Company, in which it agreed to pay any damage to the car occasioned by accident or casualty. It was found that under the contract the railroad was primarily liable for the fire damage to the car, whereas the liability of the insurance company was secondary. We agree with the Oregon Supreme Court when it stated in the Weller case that an insurer, having paid a loss, is not entitled to the right of subrogation by virtue of a contract between insured and a third party unless the contract shows primary liability on the part of such third person for loss of the property insured. In the case at bar there was no express contract on the part of Bank in favor of Interior as there was on the part of the railroad in the Pullman case. Furthermore, there was no primary liability on the part of a third person, the bank, for the loss; the primary liability rested on the employee Crowe. Therefore, the Pullman case is not authority in favor of Insurers herein.

 If Insurers have no right to subrogation, their position is not improved by the assignments to them of insured's claim against Bank. When Insurers paid Interior, the right of Interior to pursue its claim against Bank was destroyed as Interior would not be permitted a dual recovery. Therefore, there was in existence no enforceable claim against Bank which Interior could assign to Insurers, and which would support recovery in favor of Insurers. The distinction between subrogation and assignment is clearly set forth in 6 C. J.S., Assignments, § 3, p. 1051: "So also subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the ben-

efit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned." In accord: Meyers v. Bank of America N. T. & S. Ass'n, 11 Cal.2d 92, 77 P.2d 1084; Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71. That Oregon law follows the rule stated is evident in American Central Ins. Co. v. Weller, 106 Or. 494, 212 P. 803, where the court held, as already mentioned in connection with this case, that payment by the insurer on the insurance policy satisfied the debt involved, and concluded that the debt could not be assigned.

Insurers have no right of subrogation. The assignment to them of Interior's cause of action against the bank cannot assist them. The trial court correctly applied the law throughout the trial of the case.

Affirmed.