**BANK OF FORT MILL, a Corporation,**
**Appellant,**

v.

**LAWYERS TITLE INSURANCE COR-**
**PORATION, a Corporation,**
**Appellee.**

**No. 7837.**

United States Court of Appeals
Fourth Circuit.

Argued April 15, 1959.

Decided June 15, 1959.

Huger Sinkler and Charles H. Gibbs, Charleston, S. C. (Wm. C. Boyd, Boyd,

Bruton & Lumpkin, Columbia, S. C., and Sinkler, Gibbs & Simons, Charleston, S. C., on brief), for appellant.

Edward D. Buckley, Charleston, S. C. (Bailey & Buckley, Charleston, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BOREMAN, District Judge.

BOREMAN, District Judge.

Lawyers Title Insurance Corporation, herein referred to as Lawyers, brought action against the Bank of Fort Mill, herein referred to as defendant Bank, and from a judgment in favor of Lawyers, defendant Bank prosecutes this appeal.

Lawyers issued its policy of title insurance to Perpetual Building and Loan Association insuring the title of one Berford F. Sims to real property in Charleston, South Carolina, in connection with a mortgage loan which Perpetual intended to make to Sims. One Robert B. Stall, Jr., a practising lawyer of Charleston, South Carolina, who was listed in Lawyers roster of approved attorneys, negotiated the loan, procured for Perpetual the policy of title insurance and closed the loan. Without authority, Stall had signed Sims' name to the note and mortgage and certified the title to the mortgaged property as being in Sims, which certification was utterly false, the title being in a stranger to the transaction.

Perpetual had funds on deposit with defendant Bank and drew its check for the amount of the mortgage loan against such funds, making the check payable to the order of both Sims, the purported borrower, and Stall, Atty. Stall then endorsed the check, forged Sims' name thereon as endorser and deposited the proceeds to his own account with the First National Bank of South Carolina in Charleston. The last named bank, after crediting the amount of Perpetual's check to Stall's account, forwarded the check to defendant Bank for payment, with the usual unconditional guarantee of prior endorsements. The defendant Bank paid the check and charged it against Perpetual's account.

Through Stall's subsequent disclosures and admissions, the title defect became known and Lawyers, under the terms of its title insurance policy, paid Perpetual its loss, taking an assignment from Perpetual of all claims or causes of action arising out of the fraudulent transaction. Lawyers then brought this action against defendant Bank, claiming to be subrogated to Perpetual's alleged cause of action against defendant Bank for paying its depositor's check on a forged endorsement.

The District Court, sitting without a jury, held:

"Perpetual placed the borrower's name on the check in order to protect itself from the very thing which happened. The Bank by taking the forged endorsement unwittingly allowed Stall to consummate his fraud.

"If the check of Perpetual had not been honored, Perpetual * * * would have suffered no loss. Perpetual would still have had its funds and no matter how invalid the title might have been without loss there could have been no claim against plaintiff [Lawyers].

" * * * Since the liability of the Bank to its depositor and plaintiff [Lawyers] to Perpetual rise under different obligations, plaintiff has never owed any duty to defendant, therefore, there is no reason for balancing equities.

"I can see no reason why the Bank should not pay its liability to plaintiff since it admits it is liable to its depositors."

This Court recognizes its duty to follow and apply South Carolina law and to decide the question whether the application of South Carolina law to the facts and circumstances here presented permits a paid surety to be subrogated to the right of the principal and to thus recover against an innocent drawee bank which has paid the check of the principal on a forged endorsement.

Counsel for the parties to this litigation agree that no specific South Carolina case is to be found which is directly in point and "on all fours to the case at bar". However, it seems to be well settled in South Carolina that the liability of a drawee bank to its depositor for paying a check mistakenly or on a forgery is absolute, and the question of negligence on the part of the bank is immaterial. Life Ins. Co. of Va. v. Edisto Nat. Bank, 1932, 166 S.C. 505, 165 S.E. 178. See, also, Ellis Weaving Mills v. Citizens & Southern Nat. Bank, D.C. W.D.S.C.1950, 91 F.Supp. 943, affirmed 4 Cir., 1950, 184 F.2d 43; Glens Falls Indem. Co. v. Palmetto Bank, D.C.W.D. S.C.1938, 23 F.Supp. 844, affirmed 4 Cir., 1939, 104 F.2d 671. Thus, the right of action which Perpetual had against defendant Bank was an absolute right of indemnity for paying Perpetual's check on a forged endorsement.

In the instant case, Lawyers contends that it is entitled to be subrogated to the right of Perpetual. By the overwhelming weight of authority, the right of subrogation is an equitable, rather than an absolute, right, applicable only where the equities of the party seeking subrogation are superior to those of the party against whom the right is asserted. See Note 1942, 137 A.L.R. 700. Also, it is the general view that a paid surety has fewer equities than an innocent bank, since the surety company is paid to assume the specific risk. American Surety Co. v. Bank of California, 9 Cir., 1943, 133 F.2d 160, affirming D.C.Or.1941, 44 F.Supp. 81; Washington Mechanics Savings Bank v. District Title Ins. Co., 1933, 62 App.D.C. 194, 65 F.2d 827; Meyers v. Bank of America Nat. Trust & Sav. Ass'n, 1938, 11 Cal.2d 92, 77 P.2d 1084; Louisville Trust Co. v. Royal Indem. Co., 1929, 230 Ky. 482, 20 S.W.2d 71. See Restatement, Security, § 141(c) (1941). Contra, First & Tristate Nat. Bank & Trust Co. of Fort Wayne v. Massachusetts Bonding & Ins. Co., 1936, 210 Ind. App. 361; 200 N.E. 449; Kansas City Title & Trust Co. v. Fourth Nat. Bank, 1932, 135 Kan. 414, 10 P.2d 896, 87 A.L.R. 334.

To support its contention, that the law of South Carolina is contrary to the general view and permits subrogation without regard to the equities of the parties, Lawyers relies strongly upon three South Carolina decisions mentioned and briefly discussed in the numbered paragraphs next following.

(1) In American Surety Co. v. Mills, 1939, 191 S.C. 362, 4 S.E.2d 308, 124 A.L.R. 1147, the Court expressly recognized the general law that subrogation is an equitable right but held the party against which liability was asserted by the party claiming the right of subrogation to be in an *inferior* equitable position in that it was constructively charged with negligence.

(2) Globe & Rutgers Fire Ins. Co. v. Foil, 1938, 189 S.C. 91, 200 S.E. 97, holds merely that where the *tortious conduct* of a third person is the cause of the loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated *pro tanto* by operation of law to whatever rights the insured may have against the wrongdoer. The Court recognized the rule that subrogation is an equitable right but allowed subrogation on the basis that the defendant, again, was in an inferior equitable position, being a wrongdoer whose tortious conduct caused the loss.

(3) Lawyers refers to Rivers v. Liberty Nat. Bank, 1926, 135 S.C. 107, 133 S.E. 210, 212, as the "key case". It is true that the Court did not allow the fact that the plaintiff was a *paid surety* to defeat subrogation; but the basis on which subrogation was permitted was the conclusion of the Court that the bank, against which subrogation was asserted, was "guilty of gross negligence". While allowing subrogation, the Court clearly pointed out that "subrogation is an equity". Further, the Court cited the case of United States Fidelity & Guaranty Co. v. Peoples Nat. Bank, 127 Tenn. 720, 157 S.W. 414, and approvingly quoted therefrom as follows:

"It is insisted that the * * * surety was paid to take the risk, and, having taken it, should not seek to be relieved therefrom by throwing the burden on the bank. The majority are of the opinion that this objection is met by the fact that, when the bank knowingly participated in the conversion, it became personally liable for the fund * * and that the surety was entitled to be subrogated to the rights of action which the creditors whom he paid held against one primarily liable."

From the foregoing quotation, the strong inference arises that, had it not been for the conscious participation of the bank in the wrongdoing, the bank's argument against the *paid surety's* right to subrogation would not have been "met".

As previously pointed out, the defendant Bank's liability to its depositor, Perpetual, was an absolute and inescapable liability for paying on a forged endorsement. There is neither indication nor contention here that the defendant Bank was guilty of even the slightest degree of negligence. Therefore, it appears that none of the three South Carolina cases, discussed above, lends support to Lawyers' contention that it is entitled to the equitable right of subrogation against the *innocent* defendant Bank. Moreover, a comparatively recent South Carolina decision, although not otherwise pertinent to the instant case, expressly states that subrogation is an equitable right and will be enforced, or not, according to the dictates of equity and good conscience and that it arises independently of contract provisions. See Powers v. Calvert Fire Ins. Co., 1950, 216 S.C. 309, 57 S.E.2d 638, 16 A.L.R.2d 1261.

It will be remembered that Lawyers took an assignment from Perpetual of all claims or causes of action arising out of the fraudulent transaction. There are several cases, from jurisdictions other than South Carolina, where a decision has been based on such an assignment, rather than on the right of subrogation. First Nat. Bank of Atlanta v. American Surety Co., 1944, 71 Ga.App. 112, 30 S.E.2d 402; Metropolitan Casualty Ins. Co. v. First Nat. Bank in Detroit, 1933, 261 Mich. 450, 246 N.W. 178; National Surety Co. v. Bankers Trust Co., 1930, 210 Iowa 323, 228 N.W. 635; Grubnau v. Centennial Nat. Bank, 1924, 279 Pa. 501, 124 A. 142. These decisions were premised on the conception that the assignment converted the right to a *legal* right and prevented the Court from applying equitable principles. The fallacy in this reasoning is made clear in American Surety Co. v. Bank of California, supra, and in United States Fid. & Guaranty Co. v. First Nat. Bank, 5 Cir., 1949, 172 F.2d 258. As stated in American Surety Co. v. Bank of California, 133 F.2d at page 164.

"If insurers have no right to subrogation, their position is not improved by the assignments to them of insured's claim against Bank."

█ Applying the holding of the court in that case to the facts of the instant case, when Lawyers paid Perpetual, the right of Perpetual to pursue its claim against the Bank was destroyed, as Perpetual would not be permitted a dual recovery; and, therefore, there was in existence no enforceable claim against the Bank which Perpetual could assign to Lawyers, and which would support recovery in favor of Lawyers. Assignment of a legal claim necessarily contemplates the continued *existence* of the claim assigned. The equitable doctrine of subrogation, on the other hand, presupposes a *destruction* of the claim by an actual payment and satisfaction of the claim by the party seeking subrogation. That Court cites as in accord: Meyers v. Bank of America N. T. & S. Ass'n., 11 Cal.2d 92, 77 P.2d 1084; Louisville Trust Co. v. Royal Indem. Co., 230 Ky. 482, 20 S.W.2d 71; and American Cent. Ins. Co. v. Weller, 106 Or. 494, 212 P. 803. See also 6 C.J.S., Assignments § 3, setting forth the distinction between subrogation and assignment. There apparently being no South Carolina decision on this particular point, we adopt what we believe to be the more reasonable and logical view that assignment creates no right

greater than the equitable right of subrogation.

We are of the opinion that in the instant case there should have been a balancing of equities and that Lawyers, the paid surety, had no right of subrogation as against the innocent defendant Bank, nor did Lawyers acquire any cause of action against the defendant Bank by virtue of the assignment from Perpetual.

For the reasons herein stated, the judgment appealed from is reversed and the case remanded with the direction that judgment be entered for the defendant.

Reversed and remanded.