The FIDELITY & CASUALTY COMPANY OF NEW YORK, a Corporation, Plaintiff in Error,

v.

NATIONAL BANK OF TULSA, a National Banking Association, and Boulder Bank and Trust Company, formerly the Citizens State Bank, an Oklahoma Banking Corporation, Defendants in Error.

No. 40286.

Supreme Court of Oklahoma.

Dec. 17, 1963.

Sanders, McElroy & Whitten, Tulsa, Frederick A. Smith, Tulsa, of counsel, for plaintiff in error.

Carl Pinkerton, James C. Pinkerton, Tulsa, for defendant in error National Bank of Tulsa.

Houston, Klein & Davidson, Tulsa, for defendant in error Boulder Bank and Trust Co. formerly The Citizens State Bank.

JOHNSON, Justice.

The plaintiff in error, Fidelity & Casualty Company of New York, hereafter referred to as plaintiff, filed this action in the District Court of Tulsa County against National Bank of Tulsa and Boulder Bank and Trust Company.

The petition alleges that one W. W. Jamar had been a court clerk in Tulsa County from January 7, 1935 to July 8, 1955; that during this period of time Jamar forged drafts totaling $111,514.36 and presented these to Citizens State Bank (now Boulder Bank & Trust Company), and these drafts in turn were presented to National Bank, depository for Tulsa County, by which bank they were paid. The petition alleges that it was the bondsman for such official, and in cause no. 92259 in the District Court of Tulsa County, Oklahoma, Tulsa County recovered a judgment against plaintiff in the sum of $14,670.55. This judgment was affirmed by this Court, amounting with interest to $16,915.44, which amount was paid by plaintiff.

In other suits against the two banks by Tulsa County, such county was granted judgments against the banks for additional sums not covered by bonds executed by plaintiff, the banks in each case taking proportional credit for the amount paid by plaintiff.

This suit seeks recovery of the amount paid by plaintiff to Tulsa County, it being asserted that it is subrogated to the rights of Tulsa County against the banks. The trial court sustained the demurrer of the National Bank of Tulsa to Plaintiff's petition, and upon refusal of plaintiff to amend, same was ordered dismissed, and this appeal by plaintiff followed.

Inasmuch as the appeal of plaintiff from the judgment in the Boulder Bank portion of the judgment has been dismissed by this Court, no further discussion will be indulged concerning that phase.

Therefore, the ruling of the trial court sustaining the defendant's demurrer and dismissing plaintiff's petition against the National Bank of Tulsa is the sole question before us.

The record discloses that the trial court expressed the basis of its conclusions. In regard to the subrogation, the court said:

"* * * I feel that under all the facts and circumstances, that F & C is subrogated to Tulsa County is this particular case."

He thus disposed of the question of subrogation, but he continued in regard to another phase, stating that F & C and the "National Bank" were both more or less innocent parties, and "I find that the equities of F & C are not superior to those of the National Bank and therefore the demurrer of N. B. T. will be sustained on that basis." The correctness of this ruling is challenged.

■ Subrogation is purely an equitable doctrine. See 50 Am.Jur. page 683.

■ In the case of Fourth National Bank of Tulsa v. Board of Com'rs of Craig County, 186 Okl. 102, 95 P.2d 878, the fourth paragraph of the syllabus by the court reads:

"Subrogation is an equitable doctrine to compel the ultimate discharge of an obligation by the party who in good conscience ought to pay it, and unless the equities of the party seeking subrogation are superior to those of the party against whom subrogation is sought it must be denied."

It is the application of this latter part of the above syllabus that creates the area of disagreement in the instant case. The plaintiff insists that its equities are superior to those of the defendant bank, while the bank urges that in any event its equities are equal to those of plaintiff. Upon a determination of this point the outcome must depend.

The record discloses that both plaintiff and defendant are innocent parties. Obviously, plaintiff could not be a party to the misconduct of the defaulting official. The argument is advanced that because the defendant cashed forged instruments it is in a position where its equities are not equal to those of the plaintiff. After considerable research, we find no authorities from this court bearing directly upon the issue, but sister states have been called upon to decide the question. We find a great unanimity of opinion among these.

In the federal case of American Surety Co. of New York v. Lewis State Bank, (C.C.A. 5th) 58 F.2d 559, the court concludes that the equitable remedy of subrogation can properly be applied in favor of a surety on a fidelity bond *only* against persons who have participated in the wrong of the principal and never against an innocent person wronged by the principal's fraud.

In the case of Washington Mechanics' Sav. Bank v. District Title Ins. Co., 62 App. D.C. 194, 65 F.2d 827, the surety on the fidelity bond was held not entitled by subrogation to collect from the bank for paying on forged instruments. The court observed that subrogation is an equitable remedy applicable only where one party is required to pay a debt for which another is primarily answerable and which the latter should in equity discharge; that the remedy cannot be invoked as a matter of right, without regard to the circumstances of the particular case, and that it can be invoked only in cases where justice demands its application and where the equities of the party asking subrogation are greater than those of its adversary. It was further said:

"We are unable to see any particular in which the equities of the bonding company are superior to those of the appellant bank. Neither one was guilty of culpable negligence in the transaction. The bonding company, being in the business of guaranteeing for a consideration the faithful conduct of employees, enabled the defaulting employee to hold the position of trust which he occupied. The appellant bank was acting consistently with the ordinary course of banking business in accepting a check whose genuineness it had no reason to doubt. It can not be said that either one of these parties, as compared with the other, was primarily liable for the default. It follows. that the equities of neither are superior to the equities of the other in the transaction."

Again, in the case of Meyers v. Bank of American Nat. Trust & Sav. Ass'n (1938) 11 Cal.2d 92, 77 P.2d 1084, the court said:

"* * * As stated hereinbefore: the right to maintain an action of this kind and to a recovery thereunder involves a consideration of, and must necessarily depend upon the respective equities of the parties. Here, the indemnitor has discharged its primary contract liability. It has paid what it contracted to pay, and has retained to its own use the premiums and benefits of such contract. It now seeks to recover from the bank the amount thus paid. It must be conceded that the bank is an innocent third party, whose duty to the employer was based upon an entirely different theory of contract, with which the indemnitor was not in privity. Neither the indemnitor nor the bank was the wrongdoer, but by independent contract obligation each was liable to the employer. In equity, it cannot be said that the satisfaction by the bonding company of its primary liability should entitle it to recover against the bank upon a totally different liability. The bank, not being a wrongdoer, but in the ordinary course of banking business, paid money upon these checks, the genuineness of which it had no reason to doubt, and from which it received no benefits. The primary cause of the loss was the forgeries committed by the employee, whose integrity was at least impliedly vouched for by his employer to the

bank. We cannot say that as between the bank and the paid indemnitor, the bank should stand the loss. * * * "

In Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510, the court said under similar facts:

"The right to recover from a third person does not stand on the same footing as the right to recover from the principal."

The Iowa case of Baker v. American Surety Co., 181 Iowa 634, 159 N.W. 1044, holds that a surety on the bond of the treasurer of a local union was not, upon payment to the obligee for the principal's defalcation, subrogated to the rights of the union against a depository bank which paid out to the treasurer funds of the union on deposit with it, upon checks or indorsements forged by the treasurer, although it would have been subrogated to the rights of the union against the treasurer. In so holding the court said:

"If the surety is adjudged liable thereon and pays the alleged loss occasioned by Brown's dishonesty, it will merely pay Brown's indebtedness and not that of another, even though the other may also be liable therefor. At the most it is a case where each of two parties may be held for the dissipation of the same moneys, the bank because of paying one without authority, and the other because of fraudulently inducing the bank so to do. In such a case both are absolutely liable and neither entitled to subrogation, for either in paying is satisfying his own indebtedness. But the bank on payment undoubtedly could recover over from the wrongdoer. Moreover, the equities of the surety upon payment would be measured by those, if any, existing in behalf of its principal, Brown, and, as between Brown and the bank, all are in favor of the bank, and under the rules stated subrogation must be denied. Otherwise the forger or his surety would be preferred to the one swindled by his forgeries."

The Kentucky court held in the case of Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71, that subrogation did not exist against the bank and said:

"This is not a case where the surety company on paying the principal's debt is subrogated to the rights of the obligee against the principal. * * * Nor is it a case where the surety of a trustee who paid the amount of its principal's default is permitted to follow the misappropriated trust fund and recover from a bank the amount thereof which had been paid to the bank with knowledge of its trust character, in settlement of a personal debt which the trustee owed the bank. * * * The case is one between a paid surety and a trust company, whose negligence it is claimed caused the loss. It must be conceded that the rule that makes the trust company liable to the Credit Clearing House Adjustment Corporation, (the obligee) is to say the least, a hard one. * * * Though the rule as between the bank and the employer is settled, yet, in view of its extreme harshness, we are not inclined to go further and hold that the equities of a surety that has been paid to bear the loss are superior to those of the bank that receives no benefit from the transaction."

These authorities could be continued, but suffice it to say that we find no case where both parties are innocent of either participation or negligence and have no notice of the fraud perpetrated that a recovery has been allowed against the depository by the surety who claims to be subrogated to the rights of the principal.

■ There is nothing in this record to disclose that the depository did not act in good faith in all of its dealings, and the trial court's finding that the equities of Fidelity and Casualty Company are not

superior to those of the depository is not against the clear weight of the evidence. See Buck v. Caldwell, Okl., 340 P.2d 485.

In view of this conclusion, it is unnecessary to discuss the remaining contentions of the plaintiff.

Judgment affirmed.