**AETNA CASUALTY AND SURETY COMPANY, a Connecticut corporation, et al., Plaintiffs,**

**v.**

**JEPPESON & COMPANY, a Colorado corporation, Defendant.**

**Civ. No. LV–1467.**

United States District Court,
D. Nevada.

June 26, 1972.

**1382**

Beckley, De Lanoy & Jemison, Chartered, Las Vegas, Nev., for plaintiffs.

Cromer & Barker, Las Vegas, Nev., for defendant.

### ORDER DENYING MOTIONS TO DISMISS

HALL, District Judge.

On November 15, 1964 Bonanza Airlines, operating its flight from Phoenix, Arizona, to Las Vegas, Nevada, crashed approximately 12½ miles southwest of Las Vegas, Nevada, totally destroying its plane and killing all aboard, including the crew, a total of 28 persons. Subsequently lawsuits were filed and claims were made against Bonanza Airlines, and payments of the passengers' claims were made as follows:

| CLAIM NO. | CLAIMANT | D/SETTLEMENT | AMOUNT |
|---|---|---|---|
| C–77250 | Various | – – | $ |
| C–77251 | Anderson, Darwin | 2/15/66 | 34,800.00 |
| C–77252 | Armendariz, Raymond | 9/23/68 | 110,000.00 |
| C–77253 | de Armendariz, Mrs. C. | 9/23/68 | 30,000.00 |
| C–77254 | Baumawn, Mr. F. | 3/15/66 | 147,500.00 |
| C–77255 | Buikema, Joan | 6/ 6/66 | 40,000.00 |
| C–77256 | Damoron, Harry M. | 7/27/65 | 95,000.00 |
| C–77257 | Domenga, Dr. Luis | 8/ /68 | 140,000.00 |
| C–77258 | de Domenga, Mrs. M. C. | 8/ /68 | |
| C–77259 | Gatewood, Mr. B. | 7/15/66 | 26,000.00 |
| C–77260 | Haggin, Miss Cathy | 12/15/65 | 18,750.00 |
| C–77261 | Hicks, Mr. Penny Lyn | open | 6,000.00 |
| C–77262 | Leander, Mr. D. | 6/27/66 | 325,000.00 |
| C–77263 | Riley, William | 7/31/69 | 5,000.00 |
| C–77264 | Riley, Marian | 6/10/66 | 10,000.00 |
| C–77265 | Riley (child) Carrie Lynn | 6/10/66 | |
| C–77266 | Rivera, Dr. Alfonso | 1/17/69 | 70,000.00 |
| C–77267 | de Rivera, Rosario | 1/17/69 | 35,000.00 |
| C–77268 | Robertson, M. J. | 2/17/67 | 165,000.00 |
| C–77269 | Robertson, Mrs. M. J. | 2/17/67 | 80,000.00 |
| C–77270 | Seldner, Luis F. | 6/ 9/69 | 300,000.00 |
| C–77271 | de Seldner, Lydia | 6/ 9/69 | |
| C–77272 | Snow, Dr. Burke | 1/27/67 | 240,000.00 |
| C–77273 | Snow, Mrs. Burke | 1/27/67 | |
| C–77274 | Turley, Daniel C. | 11/12/65 | 145,000.00 |
| C–77275 | Will, Dr. Hans J. | 9/16/68 | 90,000.00 |
| C–77276 | Young, Gordon | 10/14/65 | 85,000.00 |

In addition to that, the value of Bonanza's plane which was lost was $898,500, so that the total sum paid out by Bonanza to passengers added to the loss of its plane makes their total loss in excess of $3,000,000.[1]

---

1. Everything involved in this case arose, finally and definitely because of the crash of Bonanza's plane; neither the passengers nor pilots, nor crew of the plane, the airport controllers, nor builders of the plane are involved in this case.

Survivors of the crew sued Jeppeson, the defendant here, for product liability —in that its avigational charts of Mc-Carran Air Field were defective, and a jury returned a verdict of liability.

Bonanza was insured by Aetna by one policy and by Lloyds of London by two policies—one underwritten by 23 British insurance companies, and the other by a group of individual underwriters. This is a suit by the insurers for indemnity for payment to Bonanza of its losses. Proctor's cause of action is cast as a class action for the similarly situated individual underwriters under one of the above policies.

While the Complaint is broken down into a number of causes of action, the principal[2] point raised by defendant's Motion to Dismiss is simply that, except as to Aetna and (as near as I can make out) three of the British companies, the jurisdictional amount of $10,000 is not satisfied as to each individual plaintiff British company, or each member of Walpole's class, and that plaintiffs cannot "aggregate" their claims in order to make the jurisdictional amount.

■ The holdings, almost since the founding of the Republic, that jurisdictional grants to federal courts must be narrowly construed, are too well known and numerous to require citation here. I am mindful of them but I am also mindful of the fiat in Rule 1 of the Federal Rules of Civil Procedure that they must be construed "to secure the just, speedy, and inexpensive determination of every action."

In "Law of Federal Courts" Professor Wright says, page 131:

"§ 36. *Aggregation of Separate Claims*

"The law on aggregation of claims to satisfy the requirement of amount

in controversy is in a very unsatisfactory state. The traditional rules in this area evolved haphazardly and with little reasoning. They serve no apparent policy and turn on a mystifying conceptual test. Finally there is a strong tendency among the lower courts to liberalize the traditional rules but this comes at the same time as a Supreme Court decision reemphasizing the old distinctions. It is hard at this time to say what the law is in this area. It is even harder to say why it is as it is."

I have examined with care all of the cases cited by both parties, as well as many others, and find a contrariety of holdings which are perhaps best reviewed by Judge Mellott in Aetna Insurance Co. v. Chicago, Rock Island et al. (District of Kansas, 1955), 127 F.Supp. 895. All of the cases cited, and those independently examined by the Court can be distinguished from each other and from the facts and applicable law here.

The right to join different plaintiffs each claiming less than the jurisdictional amount has been sustained variously, depending upon whether or not the court felt the claims depended upon "one occurrence," "one instrument," a "common interest", an "integrated" right, or were "undivided."

■ In any discussion of the question involved herein it must be kept in mind that there was but one occurrence, namely, one aircraft crash occurring in a fraction of a second, which took the lives of the people who were paid off by Bonanza, and destroyed its aircraft. It must also be kept in mind that the Memoranda of Insurance of Lloyds, which was produced on demand of the defendants, was *one* document as to the syndicates' 48.92% of liability and *one* document as to the British companies' liabili-

---

2. One other point, treated later, is made by the defendant as to the claims paid to the claimants Riley and Hicks, viz., that the total amount paid was less than $10,000 and that, even if the court has jurisdiction of the main causes of action, it would not have jurisdiction of the indemnities paid on account of Hicks and Riley.

ty of 51.08%. The Complaint alleges that there was joint and several liability under each of Lloyds' policies, and the policies show nothing to the contrary.

It seems to me that, in spite of the contrariety of decision among jurisdictions, the law of the Ninth Circuit points the way for decision here in two cases: American Surety Co. v. Bank of California (9 Cir., 1943), 133 F.2d 160, and Yuba Consolidated Gold Fields v. Kilkeary (9 Cir., 1953), 206 F.2d 884. In the latter case *Yuba* brought a suit to determine in one action its liability to numerous claims, some as low as a few hundred dollars, asserted as a result of floods in the Yuba River in 1950.[3] The Court there, among other things, adopted with approval the statement of Pomeroy, in the following language:

> "The majority view is succinctly stated by Pomeroy: ' * * * notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no "common title," no "community of right" or of "interest in the subject-matter," among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body.' "

As the Court in Aetna Insurance v. Chicago, Rock Island pointed out in 10 Cir., 229 F.2d 584, in the *Yuba* case:

> "The potential liabilities to each of the defendants were separate and distinct, but they grew out of *one occurrence*. The right asserted by the plaintiff was to be free of liability to all of the defendants arising out of the one occurrence—a flood."

The other case is American Surety v. Bank of California (9 Cir., 1943), 133 F.2d 160. In that case an employee of a depositor of a bank fraudulently forged a series of checks on his employer's account. He cashed them and used the money for his own purposes, falsifying the depositor's books to suit his conduct. The depositor was insured by American Surety Company and a Lloyds syndicate against loss sustained through the dishonesty of its employees. There as here the insurers paid the full amount of the loss and sued the bank. The loss of the American Surety Company was less than the then jurisdictional amount of $3,000, and the question of jurisdiction was raised. The Ninth Circuit, citing Troy Bank v. Whitehead & Co. (1911), 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81, held that the District Court had jurisdiction upon the ground that the claims of both companies were based upon "one subject matter," viz., the series of defalcations by one man which resulted in more than the jurisdictional requirement of $3,000.

Here the "one occurrence" was the crash. The deaths followed; the series of claims were made and discharged in total by Bonanza as appears from the above list; each of them was far in excess of the jurisdictional amount, except two. Only one issue of fact exists, regardless of the amount paid to any passenger, and regardless of the amount paid by any plaintiff, and that issue is, was Jeppeson the cause of the crash?

Support for the conclusion is also found in other jurisdictions. In Farren v. Gas Service Co. (District of Kansas, 1954), 122 F.Supp. 536, an explosion and fire occurred in the dwelling house of individual plaintiffs by reason of the negligence of the defendant, the total damage being more than the jurisdictional amount (then $3,000). Royal Insurance Company paid only $2500, whereas another insurance company paid $3800. The Court there held, even

---

3. The case involved problems of both "equity jurisdiction and jurisdiction in its strict sense."

though there were two separate policies of insurance, that they had a single title or right to recovery inasmuch as the total sum sought was the result of *one occurrence,* namely, *one fire.*

In Manufacturers Casualty Insurance Co. v. Coker (4 Cir. 1955), 219 F.2d 631, the insurance company brought an action for declaratory judgment to determine insurer's liability under a policy issued on school buses where the claims resulting from one collision varied between $200 and $2900, all less than the jurisdictional amount. The Court there held that since the liability arose under a "single instrument" and a single occurrence, the Court had jurisdiction.

In the instant case it is observed that regardless of the division of percentage of liability among themselves by the *individual* underwriters, a joint and several claim exists under each of Lloyds' policies for a total in excess of $300,000. Regardless of how much each individual or company might pay, the plaintiffs' liability to Bonanza was an *integrated* right of Bonanza arising under one policy. It follows that plaintiffs' right to recover did not become disintegrated when paid, but remained integrated.

■ The defendants urge dismissal of the Complaint for any liability arising out of payment to Hicks of a total of $6,000 and to Riley of a total of $5,000 on the ground that, being less than the jurisdictional amount, they are not properly pendent. The Court holds that they are properly pendent and the motion to dismiss as to them is denied upon the authority of Wilson v. American Chain & Cable Co. (3 Cir., 1966), 364 F.2d 558, and Borror v. Sharon Steel Co. (3 Cir., 1964), 327 F.2d 165.

Of particular interest in respect to both questions is the discussion of Chief Judge Parker concerning the necessity to avoid the multiplicity of suits in Manufacturers Casualty Insurance Co. v. Coker (4 Cir., 1955), 219 F.2d 631, at 634.

The action by Walpole is properly brought by him under F.R.C.P. 23.2.